167 N.J. Super. 311 (1979)
400 A.2d 850
THE BOARD OF TRUSTEES OF UNION COLLEGE, A PRIVATE EDUCATIONAL INSTITUTION AND THE NEW JERSEY EDUCATIONAL FACILITIES AUTHORITY, A PUBLIC CORPORATION AND GOVERNMENT INSTRUMENTALITY ORGANIZED UNDER THE LAWS OF THE STATE OF NEW JERSEY, PLAINTIFFS,
v.
KENNERLY, SLOMANSON & SMITH, A NEW YORK PARTNERSHIP FORMERLY KNOWN AS HAMBY, KENNERLY, SLOMANSON & SMITH, MCFARLAND-JOHNSON ENGINEERS, INC., A NEW YORK CORPORATION FORMERLY KNOWN AS McFARLAND-JOHNSON-GIBBONS ENGINEERS, INC., ELECTRICAL INSTALLATIONS, INC., A NEW JERSEY CORPORATION AND PAVING MATERIALS & CONSTRUCTION COMPANY, A DIVISION OF C.H. WINANS COMPANY, INC., A NEW JERSEY CORPORATION, DEFENDANTS, AND PAVING MATERIALS & CONSTRUCTION COMPANY, A DIVISION OF C.H. WINANS COMPANY, INC., A NEW JERSEY CORPORATION, DEFENDANT AND THIRD-PARTY PLAINTIFF,
v.
TRAVELERS INDEMNITY COMPANY, A CONNECTICUT CORPORATION AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY, THIRD-PARTY DEFENDANT, AND ELECTRICAL INSTALLATIONS, INC., A NEW JERSEY CORPORATION, DEFENDANT AND THIRD-PARTY PLAINTIFF,
v.
MAYER AND FELDHEIM ASSOCIATES, INC., THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided February 9, 1979.
*312 Mr. Robert W. Delventhal for plaintiff Board of Trustees of Union College (Messrs. Crummy, Del Deo, Dolan & Purcell, attorneys).
Mr. Edward F. Lamb for defendant McFarland-Johnson Engineers, Inc. (Messrs. Robinson, Wayne & Greenberg, attorneys).
McKENZIE, J.S.C.
Does an implied warranty of fitness attach to the supplying of the design and specifications for the installation of the lighting system for a parking lot? This is the principal question raised in the defendant's motion for partial summary judgment. The court previously granted the motion in an oral opinion to which this is supplemental.
On or about April 20, 1971 defendant Kennerly, Slomanson and Smith, a New York partnership (hereinafter referred to as the "architect"), contracted with plaintiff Union College to provide architectural and engineering services for the construction of a parking lot and road extension on lands leased by plaintiff in Cranford, New Jersey. The architect, in turn, contracted with McFarland-Johnson Engineers, Inc. (hereinafter referred to as the "engineer") for site engineering services in connection with the construction project. Among the engineer's responsibilities were the preparation of *313 construction specifications for the parking lot's lighting system and the supervision of the installation of the lighting system in compliance with those specifications. Plaintiff alleges that the lighting system, installed under the defendant engineer's supervision and according to its specifications, is defective and seeks recovery based upon negligence and breach of express and implied warranties.
On this motion for partial summary judgment defendant engineer seeks to strike the allegations of breach of warranty. Defendant argues that no express warranties were given to any of the parties, and that an allegation of breach of an implied warranty of fitness as a matter of law does not state a cause of action against a professional such as an engineer.
With regard to the allegation of an express warranty, there is no evidence of such a warranty at this point in the case. The writings between the parties indicate no basis for this claim. However, plaintiff argues that parol evidence may indicate an oral warranty running from the engineer to the architect, of which it would be the third-party beneficiary. If there is evidence of such an express warranty it would defeat the motion for partial summary judgment, since genuine issues of fact would then arise. Cf. Platt v. New Irvington Hotel of Lakewood, Inc., 85 N.J. Super. 330, 340 (App. Div. 1964).
All discovery has not been completed. Plaintiff seeks to take depositions of some of defendants' witnesses. While it may be unlikely that such evidence will be forthcoming, the party seeking to establish the fact should be entitled to exhaust all discovery before the claim is disposed of summarily. See Templeton v. Glen Rock, 11 N.J. Super. 1, 4-5 (App. Div. 1950). Since plaintiff has not exhausted the possibility of developing evidence of an oral warranty, the motion for summary judgment on the claim of express warranty is premature and will be denied without prejudice to its being renewed when discovery has been completed.
*314 With regard to the claim of an implied warranty of fitness, the gravamen of the complaint is that in designing and furnishing specifications for the lighting system, the engineer impliedly warranted that the system as designed and specified would be reasonably fit for the use intended. Plaintiff claims the existence of an implied warranty both under the Uniform Commercial Code, N.J.S.A. 12A:2-315, and under the body of case law that has arisen since Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358 (1960). See Santor v. A & M Karagheusian, Inc., 44 N.J. 52, 66-67 (1965); Schipper v. Levitt & Sons, Inc., 44 N.J. 70 (1965); Newmark v. Gimbel's, Inc., 54 N.J. 585 (1969), applying the principle of strict liability in tort to various transactions.
This court will not deal at length with the history and relationship of the implied warranty of fitness under the Uniform Commercial Code and the principle of strict liability in tort. While the two theories differ (see the court's discussion in Heavner v. Uniroyal, Inc., 63 N.J. 130, 146-155 (1973)), the central principle of strict liability is common to both. 2 Frumer & Friedman, Products Liability, § 16A(4) (a) (1978).
In New Jersey, actions under either theory have been allowed only in cases involving the supply or manufacture of defective products. See, e.g., Cintrone v. Hertz Truck Leasing & Rental Service, 45 N.J. 434 (1965), and cases cited, supra. Although our courts have refused to base liability on rigid distinctions between the sale of a product and the furnishing of services in a situation involving elements of both (see Newmark v. Gimbel's, Inc., supra 54 N.J. at 593-595), and have emphasized that policy considerations will govern the application of the doctrine of strict liability regardless of whether such activity be characterized as a sale or a service (see Brody v. Overlook Hospital, 127 N.J. Super. 331 (App. Div. 1974), aff'd 66 N.J. 448 (1975)), no New Jersey case has extended implied warranty or strict liability in tort to situations involving the rendition of professional services.
*315 In Magrine v. Krasnica, 94 N.J. Super. 228 (Cty. Ct. 1967), aff'd sub nom. Magrine v. Spector, 100 N.J. Super. 223 (App. Div. 1968), aff'd 53 N.J. 259 (1969), the court refused to hold a dentist strictly liable when a hypodermic needle broke in the patient's jaw. The court noted (94 N.J. Super. at 241) that the essence of the relationship between dentist and patient was the furnishing of professional services rather than the insertion of goods or products into the stream of commerce.
In Newmark v. Gimbel's Inc., supra, a beauty parlor was held strictly liable for damages caused by the application of a defective permanent wave solution. In distinguishing Magrine the court noted that the rendition of professional services by a doctor or dentist was neither mechanical nor routine and that the physician's and dentist's roles called for the exercise of an individualized judgment concerning the diagnosis and treatment of each patient. On this ground the court held that "such men are not producers or sellers of property in any reasonably acceptable sense of the term." 54 N.J. at 597. In contrast, the beauty parlor applied the same product in a routine and mechanical manner to large numbers of people in the regular course of its business. By doing so it was in a position analogous to that of a retailer supplying a product. 54 N.J. at 600. Customers of the beauty parlor were as much buyers of a product as if they had bought the permanent wave solution and applied it themselves. Therefore the Newmark court held strict liability applicable.
Schipper v. Levitt & Sons, Inc., 44 N.J. 70, 90 (1965), held there was no real distinction between defendant builder-developer's mass production and sale of substantially identical homes and the mass production and sale of automobiles in Henningsen v. Bloomfield Motors, supra. Because of the similarity to defective, undifferentiated products placed into the stream of commerce, strict liability was deemed applicable.
Plaintiff relies on authorities in other states. In Broyles v. Brown Engineering Co., 275 Ala. 35, 151 So.2d 767 *316 (1963), the Alabama Supreme Court held that engineers submitting plans and specifications for the draining of a tract of land in a housing subdivision impliedly warranted their sufficiency for the purpose in view. The court distinguished between the services provided by the engineers and those provided by doctors, dentists and architects, referring to the services of the latter three as largely experimental and subject to conditions beyond their control and influence; in comparison, an engineering survey of drainage requirements of a tract of land was not so involved with unknown uncontrollable topographical or landscape conditions as to prevent the imposition of an implied warranty. A similar case in Texas imposed liability on the engineer designing and supervising the installation of a drainage system, but the court based its decision on the existence there of a trespass to real property. Langford v. Kraft, 551 S.W.2d 392 (Tex. Civ. App. 1977), aff'd sub nom. Kraft v. Langford, 565 S.W.2d 223 (Tex. Sup. Ct. 1978).
However, plaintiff's position has been rejected by a majority of the states that have considered it. In Allied Properties v. John A. Blume & Assoc., Engineers, 25 Cal. App.3d 848, 102 Cal. Rptr. 259 (D. Ct. App. 1972), plaintiff claimed an engineering firm impliedly warranted that a pier and accompanying floats designed by the firm were reasonably suitable for use by small craft. The court held that since the primary objective of the transaction was to obtain services, the doctrines of implied warranty and strict liability were not applicable. Other California cases have held to the same effect. See, e.g., Stuart v. Crestview Mutual Water Co., 34 Cal. App.3d 802, 110 Cal. Rptr. 543 (D. Ct. App. 1973).
Other states declining to impose an implied warranty of fitness in regard to professional services rendered by architects and engineers include Colorado (Johnson-Voiland-Archuleta, Inc. v. Roark Assoc., 572 P.2d 1220 (Colo. App. 1977)); Minnesota (City of Mounds View v. Walijarvi, Minn., 263 N.W.2d 420 (Sup. Ct. 1978)); Florida *317 (Audlane Lumber & Builders Supply, Inc., v. D.E. Britt Assoc., Inc., 168 So.2d 333 (Fla. D. Ct. App. 1964), cert. den., 173 So.2d 146 (Fla. Sup. Ct. 1965)); and New York (Sears, Roebuck & Co v. Enco Assoc., Inc., 43 N.Y.2d 389, 401 N.Y.S.2d 767, 372 N.E.2d 555 (Ct. App. 1977)).
It should be noted that in the present case no evidence has been presented to show that the engineer, in providing the specifications for the lighting system and in supervising the work, was engaging in any routine or mechanical rendition of services. There is no indication that the engineer produced the plans and specifications from any stock supply, or that they were mass produced. The inference instead is that they reflect the exercise of judgment in a situation where unknown and uncontrollable factors are common. To the extent that defendant may have had similar projects in which it designed similar electrical or lighting systems, its activities would still not be analogous to those of a manufacturer of automobiles or homes or a routine service involving a defective product, because of the inevitable varying factors and singular problems accompanying each project.
This court notes that the Court of Appeals for the Third Circuit also has construed the law in this State to hold that strict liability is inapplicable to the services rendered by an engineering company in the case of La Rossa v. Scientific Design Co., 402 F.2d 937 (1968). Reviewing New Jersey law, the court concluded that none of the considerations justifying the imposition of strict liability obtained in the case of a defendant employed to design, engineer and supervise construction and initial operation of a chemical plant. Among the considerations discussed by the court were the nonexistence of any mass production and distribution of goods to a large body of distant consumers who would find it difficult to prove a specific act of negligence, and the highly specialized nature of the engineering services involved.
The rationale of this view has been well stated in the Minnesota case of City of Mounds View v. Walijarvi, supra:
*318 Architects, doctors, engineers, attorneys, and others deal in somewhat inexact sciences and are continually called upon to exercise their skilled judgment in order to anticipate and provide for random factors which are incapable of precise measurement. The indeterminable nature of these factors makes it impossible for professional service people to gauge them with complete accuracy in every instance ... Because of the inescapable possibility of error which inheres in these services, the law has traditionally required, not perfect results, but rather the exercise of that skill and judgment which can be reasonably expected from similarly situated professionals. [263 N.W.2d at 424]
This court is satisfied that neither fundamental justice nor the prior decisions in this State or elsewhere dictate an extension of implied warranty liability under the Uniform Commercial Code or strict liability in tort to the activities of the defendant-engineer in this case.
Since there is no dispute of fact relating to the existence of any implied warranty or other basis of strict liability, the motion for partial summary judgment dismissing plaintiff's claim for breach of implied warranty is granted.