GARY KLEIN vs. EDUARDO F. CATALANO & another.[1]

Middlesex.  March 1, 1982. — July 7, 1982.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Architect. Statute,* Construction, Retroactive statute. *Negligence,* Architect, Building contractor. *Practice, Civil,* Standing. *Constitutional Law,* Alteration of common law rights, Equal protection of laws. *Due Process of Law,* Regulation of economic activity, Statute of repose. *Contract,* Building contract. *Warranty.*

General Laws c. 260, § 2B, a statute of repose which places a time limit on the tort liability of architects and building contractors, is applicable to causes of action involving work completed before it took effect, and the application of the statute to such a cause of action which did not accrue until almost eight years after the statute took effect did not abridge the plaintiff's constitutional guarantees of due process of law. [704-706]

The plaintiff in an action against an architect and an architectural firm had standing to contend that the time limit on the tort liability of architects and building contractors established by G. L. c. 260, § 2B, is unconstitutional because it deprives other potential defendants of the equal protection of the laws. [706-707]

General Laws c. 260, § 2B, which places a time limit on the tort liability of architects and building contractors, does not, on its face, violate the due process or equal protection guarantees of either the Federal or the Massachusetts Constitution [707-711]; nor does the statute abridge the right of every subject to a remedy by recourse to the laws, as guaranteed by the Massachusetts Constitution [711-718].

General Laws c. 260, § 2B, which places a time limit on the tort liability of architects, was applicable to bar a claim against an architect based on an implied warranty that he would exercise the standard of reasonable care required of members of his profession. [718-720]

CIVIL ACTION commenced in the Superior Court Department on February 27, 1979.

---

[1] Eduardo F. Catalano Architects and Engineers, Inc., and Mario Pfaff. Pfaff is no longer a party to this appeal.

The case was heard by *Meyer, J.*, on a motion for summary judgment.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Ileene M. Lieberman* for the plaintiff.

*Cynthia J. Cohen (Robert M. Hacking* with her) for the defendants.

*Thomas J. Wynn & Edward J. Smith*, for Massachusetts Bar Association, amicus curiae, submitted a brief.

*Carl M. Sapers & Robert G. Dreher*, for Massachusetts State Association of Architects, amicus curiae, submitted a brief.

ABRAMS, J. This case raises the issue of the application and constitutionality of G. L. c. 260, § 2B,[2] a statute that places a time limit on the liability of architects and contractors. General Laws c. 260, § 2B, is not a statute of limitations but a statute of repose. A statute of limitations normally governs the time within which legal proceedings must be commenced after the cause of action accrues. See, e.g., *Franklin* v. *Albert*, 381 Mass. 611, 618-619 (1980). A statute of repose, however, limits the time within which an action may be brought and is not related to the accrual of any cause of action. The injury need not have occurred, much less have been discovered. See, e.g., *Rosenberg* v. *North Bergen*, 61 N.J. 190, 199-200 (1972). As a statute of repose, G. L. c. 260, § 2B, precludes recovery against those within the protection of the statute for any injury which occurs more than six years after the performance or furnishing of the design, planning, construction, or general administration of an improvement to real property. Simply put, after six years, the statute completely eliminates a cause of action against certain persons in the construction industry.[3]

---

[2] General Laws c. 260, § 2B, inserted by St. 1968, c. 612, provides that no actions of tort "arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property" shall be commenced "more than six years after the performance or furnishing of such design, planning, construction or general administration."

[3] Although G. L. c. 260, § 2B, is phrased as if it were a statute of limitations that bars an injured person from commencing an action, its effect

Since G. L. c. 260, § 2B, abolishes a cause of action in tort, the following issues arise: (1) whether G. L. c. 260, § 2B, may be applied to work completed prior to its effective date, and if so, whether the application of G. L. c. 260, § 2B, in those circumstances violates the due process guarantees of the United States or Massachusetts Constitutions; (2) whether, on its face, G. L. c. 260, § 2B, violates the equal protection and due process guarantees of the Federal or State Constitutions and the right to a remedy by recourse to the laws guaranteed by the Massachusetts Constitution; and (3) whether G. L. c. 260, § 2B, may bar a claim alleging breach of express or implied warranties.

We hold that the Legislature intended that G. L. c. 260, § 2B, apply to claims involving work completed before the statute took effect. We also believe that the application of G. L. c. 260, § 2B, in these circumstances is consistent with the due process guarantees of the Massachusetts and United States Constitutions. In addition, we think that, on its face, G. L. c. 260, § 2B, does not violate the due process and equal protection guarantees of the State and Federal Constitutions and the right to a remedy by recourse to the laws guaranteed by the Massachusetts Constitution. Finally, we conclude that G. L. c. 260, § 2B, bars the plaintiff's warranty claims, because in this case, the elements of these claims are identical to this claim of negligence.

We summarize the facts. In February, 1963, the defendant Eduardo F. Catalano agreed to design a student center on the Massachusetts Institute of Technology (M.I.T.) campus. Catalano completed and delivered all design drawings and other documents in July, 1963. By October, 1965, M.I.T.

---

is to abolish or abrogate a remedy in tort if the person is injured more than six years after the defendant's performance or furnishing of the design, planning, construction, or general administration of an improvement to real estate. Recognizing the significant interest the plaintiff has in the outcome of this litigation, we accept the plaintiff's premise that G. L. c. 260, § 2B, abolishes a remedy in tort and that we should treat his claims on this basis for the purposes of deciding the constitutionality of the statute.

accepted and occupied the building. After September, 1967, Catalano did not perform any additional services in connection with the student center. In July, 1968, the Legislature enacted G. L. c. 260, § 2B, as appearing in St. 1968, c. 612, to be effective October, 1968.

The plaintiff, Gary Klein, claims that he was injured on April 23, 1976, while leaving the Harvard Cooperative Society "Tech Coop" located in the student center. The injuries allegedly occurred when the outer door struck him and caused the plate glass panels of the door to shatter. The glass allegedly cut and damaged the nerves in his hand.

In February, 1979, the plaintiff commenced this action against Catalano individually and Eduardo F. Catalano Architects and Engineers, Inc. (Architects and Engineers), claiming negligence on the part of both Catalano and Architects and Engineers, and breach of express and implied warranties by Architects and Engineers. Prior to trial, the defendants filed motions for summary judgment claiming that G. L. c. 260, § 2B, barred the plaintiff's claims.[4] See Mass. R. Civ. P. 56 (b), 365 Mass. 824 (1974). In support of their motions, the defendants filed three exhibits: the plaintiff's complaint, Catalano's agreement with M.I.T., and Catalano's affidavit stating that Architects and Engineers never performed any services in connection with the "Tech Coop." After a hearing, a judge of the Superior Court allowed the defendants' motions based on G. L. c. 260, § 2B. Pursuant to Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974), another judge ordered the entry of final judgment for the defendants. The plaintiff appeals.

1. *Application of G. L. c. 260, § 2B, to torts arising out of work in connection with improvements to real property completed prior to the statute's effective date.*

a. *Statutory argument.* The plaintiff claims that the judge erred in granting the defendants' motions for summary judgment, because the Legislature did not intend that

---

[4] This action was consolidated for trial with the plaintiff's actions against PPG Industries, Inc., Wexler Construction Company, Inc., Salem Glass Company, Inc., M.I.T., Harvard Cooperative Society, John M. Fresina and Richard DeWolfe.

G. L. c. 260, § 2B, apply to work in connection with improvements to real property completed prior to the statute's effective date. We disagree.

Elementary rules of statutory construction require us to look to the statutory language itself as the principal source of insight into the legislative purpose. *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 37 (1977). We construe the words of the statute according to their "usual and natural meaning." *Commonwealth* v. *Gove*, 366 Mass. 351, 354 (1974). *Commonwealth* v. *Thomas*, 359 Mass. 386, 387 (1971).

General Laws c. 260, § 2B, as amended by St. 1973, c. 777, § 2, provides that "[a]ctions of tort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property shall be commenced only within three years next after the cause of action accrues; provided, however, that in no event shall such actions be commenced more than six years after the performance or furnishing of such design, planning, construction or general administration." The statute does not depend on the date of the improvement to real property but depends on the time the design, planning, construction, or general administration of the improvement to real property was furnished. We hold that G. L. c. 260, § 2B, applies to this action, although the defendants completed their work before the statute took effect.

b. *Constitutional argument.* The plaintiff claims that the judge erred in granting the defendants' motions for summary judgment, because application of the statute to work completed prior to the statute's effective date violates the due process guarantees of the United States and Massachusetts Constitutions. In making this argument, the plaintiff assumes that the application of G. L. c. 260, § 2B, in those circumstances is retroactive. We do not agree with the plaintiff's assumption that the application of the statute is retroactive.

"It is only where vested substantive rights of the parties have been adversely affected that we can say a statute oper-

ates retroactively, and it is only then that we need analyze the nature of the governmental interest involved in order to determine whether the statute, as applied, violates due process." *McCarthy* v. *Sheriff of Suffolk County*, 366 Mass. 779, 781 (1975). There is a "distinction between a cause of action which has accrued and the expectation which every citizen has if a legal wrong should occur to find redress according to the rules of statutory and common law applicable at that time. . . . '[N]o person has a vested interest in any rule of law entitling him to insist that it shall remain unchanged for his benefit.' *New York Cent. R.R.* v. *White*, 243 U.S. 188, 198 [1917]. *Munn* v. *Illinois*, 94 U.S. 113, 134 [1876]." *Pinnick* v. *Cleary*, 360 Mass. 1, 10-11 (1971).

In this case, the plaintiff's cause of action accrued when he was injured on April 23, 1976, almost eight years after the statute's effective date. Thus, any application of the statute in this case does not adversely affect any vested substantive rights of the plaintiff. The application of G. L. c. 260, § 2B, in these circumstances does not violate the due process guarantees of the United States and Massachusetts Constitutions.

2. *Facial Validity of G. L. c. 260, § 2B.*

The plaintiff claims that the judge erred in granting the defendants' motions for summary judgment because G. L. c. 260, § 2B, violates the due process and equal protection guarantees of the United States and Massachusetts Constitutions and the right to a remedy by recourse to the laws guaranteed by the Massachusetts Constitution.[5] We disagree.

a. *Standard of review.* We note at the outset that the plaintiff has a "heavy burden in seeking to overcome the statute's presumption of constitutionality. See *El Paso* v. *Simmons*, 379 U.S. 497, 508-509 (1965). 'Every rational presumption is indulged in favor of the validity of an act of the General Court. Enforcement of such legislative enactment will not be refused unless its conflict with some provi-

---

[5] The plaintiff claims that G. L. c. 260, § 2B, violates arts. 1, 10, 11, and 12 of the Massachusetts Declaration of Rights.

sion of the Constitution is established beyond reasonable doubt.'" *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.*, 374 Mass. 181, 190 (1978), quoting *Campbell* v. *Boston*, 290 Mass. 427, 429 (1935). Since G. L. c. 260, § 2B, "'trammels [no] fundamental rights' and 'is drawn upon [no] inherently suspect distinctions,'" *Blue Hills Cemetery, Inc.* v. *Board of Registration in Embalming & Funeral Directing*, 379 Mass. 368, 371 (1979), quoting *Friedman* v. *Rogers*, 440 U.S. 1, 17 (1979), it follows that "[u]nless the act of the Legislature cannot be supported upon any rational basis of fact that reasonably can be conceived to sustain it, the court has no power to strike it down as violative of the Constitution." *Sperry & Hutchinson Co.* v. *Director of the Div. on the Necessaries of Life*, 307 Mass. 408, 418 (1940). A court must sustain economic legislation if it has a permissible legislative objective and if the legislation bears a rational relation to that objective. *Pinnick* v. *Cleary*, 360 Mass. 1, 14 (1971). "Whether [the statute is] wise or effective is not, of course, the province of [courts]." *Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 505 (1982). *Commonwealth* v. *Lammi, ante* 299, 300 (1982).

b. *Due process.* The due process clause of the Fourteenth Amendment to the United States Constitution demands that a statute that regulates economic activity "bear a 'reasonable relation to a permissible legislative objective.' *Pinnick* v. *Cleary*, 360 Mass. 1, 14 (1971). Under the analogous provisions of our State Constitution,[6] we must determine whether [the statute] 'bears a real and substantial relation to the public health, safety, morals, or some other phase of the general welfare.' *Sperry & Hutchinson Co.* v.

---

[6] Articles 1, 10, and 12 of the Massachusetts Declaration of Rights are analogous to the due process clause of the Federal Constitution. See *Pinnick* v. *Cleary*, 360 Mass. 1, 14 n.8 (1971). In the area of economic regulation, there is little difference between the State and Federal due process standards. See *Blue Hills Cemetery, Inc.* v. *Board of Registration in Embalming & Funeral Directing*, 379 Mass. 368, 373 n.8 (1979). We think that G. L. c. 260, § 2B, does not violate the due process guarantees of the Federal and State Constitutions. See 711, *infra*.

*Director of the Div. on the Necessaries of Life*, 307 Mass. 408, 418 (1940)." *Blue Hills Cemetery, Inc.* v. *Board of Registration in Embalming & Funeral Directing*, 379 Mass. 368, 373 (1979).

General Laws c. 260, § 2B, was enacted in response to case law abolishing the rule that once an architect or builder had completed his work and it had been accepted by the owner, absent privity with the owner, there was no liability as a matter of law.[7] See *Inman* v. *Binghamton Hous. Auth.*, 3 N.Y.2d 137 (1957); *Montijo* v. *Swift*, 219 Cal. App. 2d 351 (1963). See also 1968 Sen. Rep. No. 1050, A Statute of Limitations for Malpractice Against Architects, Engineers and Surveyors, 16-18. These cases greatly increased the liability of architects, contractors, and others involved in the construction industry. "The architect or contractor was confronted not only with an unlimited class of potential claimants, but also, in many instances, with an extension in duration of the liability for negligence." Comment, Limitation of Action Statutes for Architects and Builders, 18 Cath. U.L. Rev. 361, 363 (1969). An injury could occur many years after the architect or contractor had completed his work. Since an ordinary statute of limitations did not begin to run until either the date of the injury or its discovery, those involved in construction were subject to possible liability throughout their professional lives and

---

[7] Six years after the enactment of G. L. c. 260, § 2B, we held that a "builder or contractor may be liable for injuries or damage caused by his negligence to persons with whom he has no contractual relation and even though his work [was] completed and accepted by the owner before the injuries or damage occurred." *McDonough* v. *Whalen*, 365 Mass. 506, 512 (1974). However, we had criticized the privity doctrine in cases decided prior to the statute's enactment. See, e.g., *Donahue* v. *Stephens*, 342 Mass. 89 (1961); *Carter* v. *Yardley & Co.*, 319 Mass. 92 (1946). Moreover, when the Legislature enacted G. L. c. 260, § 2B, it was aware of the movement to abolish privity. See 1968 Sen. Rep. No. 1050, A Statute of Limitations for Malpractice Against Architects, Engineers and Surveyors, 16-17. Thus, although G. L. c. 260, § 2B, predated our decision in *McDonough* v. *Whalen*, *supra*, the Legislature enacted this statute in response to the increased liability of architects and contractors. Cf. *Rosenberg* v. *North Bergen*, 61 N.J. 190, 194-198 (1972).

into retirement.[8] At the urging of those involved in the construction industry, the Legislature placed an absolute outer limit on the duration of this liability.[9] See Collins, Limitation of Action Statutes for Architects and Builders — An Examination of Constitutionality, 29 Fed'n of Ins. Counsel Q. 41, 41-46 (1978); Rogers, The Constitutionality of Alabama's Statute of Limitations for Construction Litigation: The Legislature Tries Again, 11 Cum. L. Rev. 1, 1-3 (1980).

Limiting the duration of liability is a well recognized public purpose.[10] "There comes a time when [a defendant] ought to be secure in his reasonable expectation that the slate has been wiped clean of ancient obligations, and he ought not to be called on to resist a claim 'when evidence has been lost, memories have faded, and witnesses have disappeared.'" *Rosenberg* v. *North Bergen*, 61 N.J. 190, 201 (1972), quoting Developments in the Law: Statutes of Limitations, 63 Harv. L. Rev. 1177, 1185 (1950). Otherwise, those engaged in the design and construction of real property may have to mount a defense when "[a]rchitectural plans may have been discarded, copies of building codes in force at the time of construction may no longer be

---

[8] In this respect, such an extended period of liability is similar to that imposed on persons in other professions. *Franklin* v. *Albert*, 381 Mass. 611 (1980) (doctors); *Hendrickson* v. *Sears*, 365 Mass. 83 (1974) (lawyers).

[9] In *McClanahan* v. *American Gilsonite Co.*, 494 F. Supp. 1334, 1346 (D. Colo. 1980), the court held that Colorado's statute of repose violated the Fourteenth Amendment. In reaching this decision, the court said that the statute "offends [the] concept of the rule of law by raising the suspicion that those who have sufficient political power or who can afford a persuasive lobbyist may achieve immunity from accountability to the laws that govern others. Such a result is intolerable in our justice system." However, as long as a law is reasonably related to a permissible legislative objective, it is valid. It is not relevant that the law is the product of lobbying by special interests, such as an industry or profession.

[10] In *Franklin* v. *Albert*, 381 Mass. 611, 619 & n.12 (1980), we recognized that an outer limit could serve a public purpose and suggested that the Legislature could place an outer limit on the time for bringing medical malpractice actions.

in existence, persons individually involved in the construction project may be deceased or may not be located."[11] *Howell* v. *Burk*, 90 N.M. 688, 694 (Ct. App. 1977).

General Laws c. 260, § 2B, places a limit on the liability of those involved in design and construction. In establishing the six-year limit, the Legislature struck what it considered to be a reasonable balance between the public's right to a remedy and the need to place an outer limit on the tort liability of those involved in construction.[12] The Legisla-

---

[11] We recognize that stale claims do not pose problems for defendants alone. The passage of time also handicaps plaintiffs, who bear the ultimate burden of proving negligence. See *Kallas Millwork Corp.* v. *Square D Co.*, 66 Wis.2d 382 (1975); *Overland Constr. Co.* v. *Sirmons*, 369 So.2d 572, 574 (Fla. 1979). We also realize that statutes like G. L. c. 260, § 2B, may be unwise, because they bar all claims that accrue after a certain time whether these claims are meritorious or frivolous. See Comment, Limitation of Action Statutes for Architects and Builders — Blueprints for Non-action, 18 Cath. U.L. Rev. 361, 363 (1969).

However, it is not our role to determine whether the Legislature acted wisely when it enacted G. L. c. 260, § 2B. See *Commonwealth* v. *Lammi, supra* at 300; *Shell Oil Co.* v. *Revere,* 383 Mass. 682, 687 (1981); *Ferguson* v. *Skrupa,* 372 U.S. 726, 728-730 (1963). "Establishing, limiting and withholding rights is peculiarly within the power and competence of the legislature so long as the legislation is not arbitrary and the classification is reasonably related to the legislative purpose." Comment, Limitation of Action Statutes for Architects and Builders — Blueprints for Non-action, *supra* at 385. We believe that G. L. c. 260, § 2B, represents a reasonable exercise of the State's police power. The Legislature could reasonably conclude that the statistical improbability of meritorious claims after a certain length of time, see note 13, *infra,* and the inability of the courts to adjudicate stale claims weigh more heavily than allowing the adjudication of a few meritorious claims. See Comment, Limitation of Action Statutes for Architects and Builders — Blueprints for Non-action, *supra.*

[12] The American Institute of Architects, the National Society of Professional Engineers, and the Associated General Contractors of America drafted a model statute which bars a person from bringing suit to recover damages for deficiencies in the design, planning, supervision or observation of construction or construction of an improvement to real property more than four years after the work is substantially completed. Collins, Limitation of Action Statutes for Architects and Builders — An Examination of Constitutionality, 29 Fed'n of Ins. Counsel Q. 41, 46 & n.27 (1978). Most States have enacted special statutes placing time limits on the liability of some persons involved in the construction industry. These time limits range in time from four to fifteen years. Collins, Limitation

ture could reasonably have concluded that a period of six years allows sufficient time for the most meritorious claims to accrue.[13]  *O'Brien* v. *Hazelet & Erdal,* 410 Mich. 1, 16 (1980).  We believe that G. L. c. 260, § 2B, does not violate the due process guarantees of the United States or Massachusetts Constitutions.[14]  See *Smith* v. *Allen-Bradley Co.,* 371 F. Supp. 698 (W.D. Va. 1974).

The plaintiff also claims that G. L. c. 260, § 2B, violates the due process guarantees of the United States and Massachusetts Constitutions and the right to a remedy by recourse to the laws guaranteed by the Massachusetts Constitution, because it abolishes his cause of action without providing a substitute remedy.

We agree with the plaintiff that G. L. c. 260, § 2B, does abolish his cause of action against these defendants without providing an alternative remedy.  See note 3, *supra.*  Since his injury occurred more than six years after the defendants completed their work, the plaintiff is barred from commencing an action to recover for injuries received as a consequence of design, planning, construction or general admin-

---

of Action Statutes for Architects and Builders — An Examination of Constitutionality, *supra* at 50-51 & n.42.  See, e.g., Tenn. Code Ann. § 28-3-202 (1980) (four years); Minn. Stat. Ann. § 541.051 (West Supp. 1981) (fifteen years).

[13] According to evidence presented at the Hearings on H.R. 6527, H.R. 6678, and H.R. 11544 before Subcommittee No. 1 of the House Committee on the District of Columbia, 90th Cong., 1st Sess. 28 (1967), 93% of all claims against architects are brought within six years of the substantial completion of the construction.  Collins, Limitation of Action Statutes for Architects and Builders — An Examination of Constitutionality, *supra* at 47-48 & n.29.

Even if we believed that a longer period should be the rule we would not invalidate the legislation.  We note that several States strike the balance at twelve years — a period which according to the evidence presented at the House hearings, encompasses 99% of the claims. *Id.* See, e.g., Ill. Ann. Stat. c. 83, § 22.3 (Smith-Hurd Supp. 1981); 42 Pa. Cons. Stat. Ann. § 5536 (Purdon Supp. 1981).

[14] A statute of repose which shifts most of the risk of loss from the members of a particular industry or profession to the general public may violate the due process guarantees, because it does not serve a legitimate public purpose.

istration of an improvement to real property. Nevertheless, we believe that G. L. c. 260, § 2B, is constitutional.[15] The United States Constitution allows the Legislature to abolish causes of action once recognized by the common law to further permissible legislative objectives. *Silver* v. *Silver*, 280 U.S. 117, 122 (1929). Thus, G. L. c. 260, § 2B, does not violate the due process clause of the Fourteenth Amendment. In addition, we see no basis for treating a law that abrogates a tort remedy differently from any other law that regulates economic activity. "There is no cause here for application of the 'compelling state interest' test which is employed where a statute impairs fundamental rights protected by the Constitution." *Pinnick* v. *Cleary*, 360 Mass. 1, 13 (1971). Since G. L. c. 260, § 2B, is rationally related to a permissible legislative objective, see 708-710, *supra*, it does not violate the due process guarantees of the Massachusetts Constitution.[16]

Further, G. L. c. 260, § 2B, does not violate the right to a remedy by recourse to the laws guaranteed by the Massachusetts Constitution. "Societal conditions occasionally require the law to change in a way that denies a plaintiff a cause of action available in an earlier day. . . . This court

---

[15] Other jurisdictions have said that the Legislature may abolish common law remedies. See, e.g., *President of Georgetown College* v. *Madden*, 505 F. Supp. 557 (D. Md. 1980), modified, 660 F.2d 91 (4th Cir. 1981); *Fujioka* v. *Kam*, 55 Haw. 7, 10 (1973); *Burmaster* v. *Gravity Drainage Dist. No. 2 of the Parish of St. Charles*, 366 So.2d 1381 (La. 1978); *Rosenberg* v. *North Bergen*, 61 N.J. 190, 199-200 (1972); *Loyal Order of Moose, Lodge 1785* v. *Cavaness*, 563 P.2d 143, 146 (Okla. 1977); *Josephs* v. *Burns*, 260 Or. 493, 503 (1971). But see *Saylor* v. *Hall*, 497 S.W.2d 218, 222 (Ky. 1973); *Overland Constr. Co.* v. *Sirmons*, 369 So.2d 572 (Fla. 1979); *Reeves* v. *Ille Elec. Co.*, 170 Mont. 104, 113 (1976).

[16] In *Pinnick* v. *Cleary*, 360 Mass. 1, 15 (1971), we left open the issue whether the due process guarantee of the Massachusetts Constitution permits the Legislature to abolish totally a common law right of recovery without providing a substitute remedy. Our decision today resolves this issue. We hold that the Legislature may enact a statute that abolishes a common law cause of action without providing a substitute remedy if the statute is rationally related to a permissible legislative objective. See *Opinion of the Justices*, 309 Mass. 571, 599 (1941).

would encroach upon the Legislature's ability to guide the development of the law if we invalidated legislation simply because the rule enacted by the Legislature rejects some cause of action currently preferred by the courts. To do so would be to place certain rules of the 'common law' and certain non-constitutional decisions of the courts above all change except by constitutional amendment. Such a result would offend our notion of the checks and balances between the various branches of government, and the flexibility required for the healthy growth of the law." *Freezer Storage, Inc.* v. *Armstrong Cork Co.*, 476 Pa. 270, 280-281 (1978). See *Pinnick* v. *Cleary*, 360 Mass. 1, 12 (1971). See also cases cited in note 15, *supra.*

In upholding G. L. c. 260, § 2B, we realize that in some cases this statute may impose great hardship on a plaintiff who has suffered injury and has a meritorious claim. However, "arguments as to hardship . . . [are] appropriate respecting the enactment of legislation. They are not controlling in the interpretation of existing statutes." *Eastern Mass. St. Ry.* v. *Trustees of Eastern Mass. St. Ry.*, 254 Mass. 28, 33 (1925).

c. *Equal protection.* The plaintiff claims that G. L. c. 260, § 2B, violates the equal protection guarantees of the United States and Massachusetts Constitutions, because it applies only to actions alleging deficiencies in design, planning, construction or general administration of improvements to real property. The plaintiff argues that G. L. c. 260, § 2B, is similar to statutes in other States which grant immunity from suit only to architects, engineers, and contractors and which deny protection to suppliers, owners, tenants, and others in control or possession at the time the defect caused the injury. Thus, the plaintiff asserts that G. L. c. 260, § 2B, creates an unreasonable and arbitrary classification scheme which results in disparate treatment for similarly situated individuals.

In making this argument, the plaintiff does not claim that G. L. c. 260, § 2B, violates his own right to the equal protection of the laws. Thus the plaintiff lacks standing in his

own right to argue that G. L. c. 260, § 2B, deprives materialmen, owners, tenants and others in control or possession, of equal protection.

We recognize that, as a rule, a plaintiff who lacks individual standing may not assert the rights of others not before the court. See *Barrows* v. *Jackson,* 346 U.S. 249, 255 (1953). This rule is based in part on the notion that a third party cannot effectively vindicate the rights of others. See *Singleton* v. *Wulff,* 428 U.S. 106, 114 (1976). However, that rationale does not apply to this case. In this case, G. L. c. 260, § 2B, bars the plaintiff from suing those defendants who are protected by G. L. c. 260, § 2B. Thus, the plaintiff's interest in the equal protection issue is as great as that of the materialmen, owners, tenants, and others in control or possession, who he claims are excluded from the statute.[17] We think that the plaintiff has standing in a representative capacity to raise the rights of the potential defendants excluded from the statute. See *McClanahan* v. *American Gilsonite Co.,* 494 F. Supp. 1334, 1342-1344 (D. Colo. 1980); *Cudahy Co.* v. *Ragnar Benson, Inc.,* 514 F. Supp. 1212, 1216 (D. Colo. 1981).

Having determined that the plaintiff has standing, we proceed to determine whether G. L. c. 260, § 2B, violates

---

[17] The plaintiff argues that G. L. c. 260, § 2B, violates the equal protection guarantees, because it classifies defendants into two groups; those granted immunity by the statute and those excluded from the statute's protection. Although the plaintiff does not belong to either group, he has standing to raise this issue. This case is distinguishable from *Paro* v. *Longwood Hosp.,* 373 Mass. 645 (1977). In that case, we said that a victim of medical malpractice lacked standing to argue that G. L. c. 231, § 60B, violated the equal protection guarantees, because it distinguished between medical malpractice tortfeasors and all other tortfeasors. A victim of medical malpractice cannot adequately represent the interests of all other tortfeasors. In this case, the plaintiff can effectively litigate the interests of those who, he claims, are excluded from the statute's protection. Like a materialman, owner, tenant, or person in control or possession, the plaintiff wants G. L. c. 260, § 2B, held unconstitutional so that he may sue the architect, engineer or contractor whose negligence allegedly caused his injury. Indeed, this plaintiff forcefully argues the same positions that the lessee argued in *King's Dep't. Stores, Inc.* v. *Poley-Abrams Corp., post* 1008 (1982).

the equal protection guarantees of the United States or Massachusetts Constitutions. "Under the equal protection clause, in the absence of a suspect classification, our role remains 'limited to determining whether the classification involved rationally "furthers a legitimate State interest."'" *Blue Hills Cemetery, Inc.* v. *Board of Registration in Embalming & Funeral Directing*, 379 Mass. 368, 376 (1979), quoting *Johnson* v. *Martignetti*, 374 Mass. 784, 791 (1978). See *Friedman* v. *Rogers*, 440 U.S. 1, 17 (1979); *Pinnick* v. *Cleary*, 360 Mass. 1, 27-28 (1971). See also *Cudahy Co.* v. *Ragnar Benson, Inc.*, 514 F. Supp. 1212, 1217 (D. Colo. 1981).

We agree with the plaintiff that G. L. c. 260, § 2B, has the effect of granting immunity from suit only to architects, engineers, contractors, and others involved in the design, planning, construction, or general administration of improvements to real property and of denying that protection to suppliers, owners, tenants, and others in possession or control. Nevertheless, the statute does not violate the equal protection guarantees. See, e.g., *President of Georgetown College* v. *Madden*, 505 F. Supp. 557 (D. Md. 1980), modified, 600 F.2d 91 (4th Cir. 1981); *Cudahy Co.* v. *Ragnar Benson, Inc.*, 514 F. Supp. 1212, 1216-1217 (D. Colo. 1981); *Smith* v. *Allen-Bradley Co.*, 371 F. Supp. 698 (W.D. Va. 1974); *Carter* v. *Hartenstein*, 248 Ark. 1172 (1970), appeal dismissed for want of a substantial Federal question, 401 U.S. 901 (1971); *Burmaster* v. *Gravity Drainage Dist. No. 2 of the Parish of St. Charles*, 366 So.2d 1381, 1386-1387 (La. 1978); *O'Brien* v. *Hazelet & Erdal*, 410 Mich. 1, 16-19 (1980); *Reeves* v. *Ille Elec. Co.*, 170 Mont. 104, 111-113 (1976); *Rosenberg* v. *North Bergen*, 61 N.J. 190, 201 (1972); *Freezer Storage, Inc.* v. *Armstrong Cork Co.*, 476 Pa. 270, 276-278 (1978); *Harmon* v. *Angus R. Jessup Assocs.*, 619 S.W.2d 522 (Tenn. 1981).

The Legislature could have rationally concluded that it was proper to place different time limits on the liability of builders from those placed on persons in possession or control as owner, tenant, or otherwise. "[T]here is a valid dis-

tinction between persons performing or furnishing the design, planning, supervision, inspection or observation of construction or the construction of an improvement to immovable property and a person in possession or control, as owner, lessor, tenant or otherwise, of such improvement at the time of the incident giving rise to the cause of action. After the date of registry in the mortgage office of acceptance of the work by the owner, there exists the possibility of neglect, abuse, poor maintenance, mishandling, improper modification, or unskilled repair of an improvement to immovable property by the owner, lessor or tenant. It is difficult for the architect or contractor to guard against such occurrences because, after the acceptance by the owner, the architect or contractor ordinarily has neither control of the improvement nor the right to enter or inspect the improvement." *Burmaster* v. *Gravity Drainage Dist. No. 2 of the Parish of St. Charles*, 366 So.2d 1381, 1385-1386 (La. 1978). See *Freezer Storage, Inc.* v. *Armstrong Cork Co.*, 476 Pa. 270, 276 (1978); *Harmon* v. *Angus R. Jessup Assocs.*, 619 S.W.2d 522 (Tenn. 1981).

The Legislature could also have reasonably concluded that it is appropriate to place separate time limits on the liability of builders and suppliers, because they work under dissimilar conditions. "Suppliers and manufacturers, who typically supply and produce components in large quantities, make standard goods and develop standard processes. They can thus maintain high quality control standards in the controlled environment of the factory. On the other hand, the architect or contractor can pre-test and standardize construction designs and plans only in a limited fashion. In addition, the inspection, supervision and observation of construction by architects and contractors involves individual expertise not susceptible to the quality control standards of the factory." *Burmaster* v. *Gravity Drainage Dist. No. 2 of the Parish of St. Charles*, 366 So.2d 1381, 1385-1386 (La. 1978). See *Freezer Storage, Inc.* v. *Armstrong Cork Co.*, 476 Pa. 270, 276-277 (1978); *Cudahy Co.* v. *Ragnar Benson, Inc.*, 514 F. Supp. 1212, 1217 (D. Colo. 1981).

Further, the Legislature could have reasonably conclud-
ed that it is appropriate to limit the liability only of ar-
chitects and engineers and other design professionals. A
limit on liability may be necessary to encourage those pro-
fessionals to experiment with new designs and materials.
"Innovations are usually accompanied by some unavoidable
risk. Design creativity might be stifled if architects and
engineers labored under the fear that every untried config-
uration might have unsuspected flaws that could lead to
liability decades later." *O'Brien* v. *Hazelet & Erdal*, 410
Mich. 1, 18 (1980).

Finally, it is well recognized that "[w]hen legislative
authority is exerted within a proper area, it need not em-
brace every conceivable problem within that field. The
Legislature may proceed one step at a time, addressing itself
to the phase of the problem which seems most acute to the
legislative mind." *Jewel Cos.* v. *Burlington*, 365 Mass. 274,
279 (1974), quoting *Mobil Oil Corp.* v. *Attorney Gen.*, 361
Mass. 401, 417 (1972). See *Johnson* v. *Martignetti*, 374
Mass. 784, 792-793 (1978). See also *Cudahy Co.* v. *Ragnar
Benson, Inc.*, 514 F. Supp. 1212 (D. Colo. 1981); *William-
son* v. *Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955).

We hold that G. L. c. 260, § 2B, does not violate the
equal protection guarantees of the United States and Massa-
chusetts Constitutions although it grants immunity only to
architects, engineers, contractors and others involved in the
design, planning, construction, or general administration of
improvements to real property and denies the same protec-
tion to materialmen, owners, tenants and others in posses-
sion or control. "When local economic regulation that does
not burden fundamental rights or is not based upon inher-
ently suspect distinctions is challenged on equal protection
grounds, this Court 'may not sit as a superlegislature to
judge the wisdom or desirability of legislative policy deter-
minations . . .; in the local sphere, it is only the *invidious*
discrimination, the *wholly* arbitrary act, which cannot
stand consistently with the Fourteenth Amendment'" (em-
phasis in original). *Cudahy Co.* v. *Ragnar Benson, Inc.*,

514 F. Supp. 1212, 1217 (D. Colo. 1981), quoting *New Orleans* v. *Dukes,* 427 U.S. 297, 303-304 (1976).

3. *Application of G. L. c. 260, § 2B, to the plaintiff's breach of implied and express warranty claims.*

The plaintiff claims that the judge should have denied the defendants' motions for summary judgment because G. L. c. 260, § 2B, does not bar his causes of action for breach of implied and express warranties. We agree with the plaintiff that G. L. c. 260, § 2B, does not apply to contract actions. "[W]here the language of the statute is plain and unambiguous," we need not examine the legislative history. *Hoffman* v. *Howmedica, Inc.,* 373 Mass. 32, 37 (1977). General Laws c. 260, § 2B, expressly provides a limitation only for actions of tort. Nevertheless, we believe that in this case G. L. c. 260, § 2B, bars the plaintiff's warranty claims.

As a general rule, "[a]n architect's efficiency in preparing plans and specifications is tested by the rule of ordinary and reasonable skill usually exercised by one of that profession. . . . [I]n the absence of a special agreement he does not imply or guarantee a perfect plan or satisfactory result." *Mississippi Meadows, Inc.* v. *Hodson,* 13 Ill. App. 3d 24, 26 (1973). See *Allied Properties* v. *John A. Blume & Assocs., Eng'rs,* 25 Cal. App. 3d 848, 856 (1972); *Johnson-Voiland-Archuleta, Inc.* v. *Roark Assocs.,* 40 Colo. App. 269 (1977); *Borman's Inc.* v. *Lake State Development Co.,* 60 Mich. App. 175, 182-183 (1975). "Architects, doctors, engineers, attorneys, and others deal in somewhat inexact sciences and are continually called upon to exercise their skilled judgment in order to anticipate and provide for random factors which are incapable of precise measurement. The indeterminable nature of these factors makes it impossible for professional service people to gauge them with complete accuracy in every instance . . . . Because of the inescapable possibility of error which inheres in these services, the law has traditionally required, not perfect results, but rather the exercise of that skill and judgment which can be reasonably expected from similarly situated professionals." *Mounds*

*View* v. *Walijarvi*, 263 N.W.2d 420, 424 (Minn. 1978). See *Trustees of Union College* v. *Kennerly, Slomanson & Smith*, 167 N.J. Super. 311, 318 (1979). See also *Broyles* v. *Brown Eng'r Co.*, 275 Ala. 35, 39 (1963). Moreover, unlike a mass producer of consumer goods, "an architect has but a single chance to create a design for a client which will produce a defect-free structure. Accordingly, we do not think it just that architects should be forced to bear the same burden of liability . . . as that which has been imposed on manufacturers generally." *Mounds View* v. *Walijarvi*, 263 N.W.2d 420, 425 (Minn. 1978). We believe that, unlike a manufacturer, an architect does not impliedly guarantee that his work is fit for its intended purpose. Rather he impliedly promises to exercise that standard of reasonable care required of members of his profession.[18]

Thus, the elements of the plaintiff's action for negligence and breach of implied warranty are the same. *Audlane Lumber & Builders Supply, Inc.* v. *D.E. Britt Assocs.*, 168 So.2d 333 (Fla. Dist. Ct. App. 1964). Consequently, we believe that G. L. c. 260, § 2B, necessarily bars the plaintiff's breach of warranty claims.[19] To hold otherwise would

---

[18] A few courts have said that an architect impliedly warrants that his work is fit for its intended use. See, e.g., *Hill* v. *Polar Pantries*, 219 S.C. 263 (1951). Some courts have limited these warranties to situations that involve routine work similar to that involved in the mass production of consumer goods. *Schipper* v. *Levitt & Sons*, 44 N.J. 70, 82, 90-92 (1965). Cf. *Broyles* v. *Brown Eng'r Co.*, 275 Ala. 35, 40 (1963). We decline to follow that approach. Otherwise "the finder of fact will be forced in every case to determine, as a preliminary matter, whether the alleged architectural error was made in the performance of a sufficiently simplistic task. Defects which are found to be more esoteric would presumably continue to be tried under the traditional [negligence] rule. It seems apparent, however, that the making of any such threshold determination would require the taking of expert testimony and necessitate an inquiry strikingly similar to that which is presently made under the prevailing negligence standard. We think that the net effect would be the interjection of substantive ambiguity into the law of professional malpractice without a favorable trade-off in procedural expedience." *Mounds View* v. *Walijarvi*, 263 N.W.2d 420, 425 (Minn. 1978).

[19] In other circumstances, we have said that breach of warranty claims are so similar to actions in tort that they are subject to statutes expressly

frustrate the purpose behind G. L. c. 260, § 2B. The Legislature enacted G. L. c. 260, § 2B, to limit the liability of architects, engineers, contractors, or others involved in the design, planning, construction, or general administration of an improvement to real property. See 708-709, *supra*. If the plaintiff could maintain his action for breach of implied warranty, the statute would not have its intended effect. The plaintiff whose negligence claim is barred by G. L. c. 260, § 2B, could bring essentially the same action under a breach of implied warranty theory. This is a result we cannot tolerate. "[I]t [is] the judge's duty . . . to give effect to the will of the people as expressed in the statute by their representative body. It is in this way . . . that the doctrine of separation of powers is given meaning." *Shell Oil Co.* v. *Revere*, 383 Mass. 682, 687 (1981), quoting *Commonwealth* v. *Leis*, 355 Mass. 189, 202 (1969) (Kirk, J., concurring).

We add that an architect may provide an express warranty of a certain result. In that event, the plaintiff may maintain an action for breach of express warranty. Cf. *Clevenger* v. *Haling*, 379 Mass. 154, 157 (1979); *Sullivan* v. *O'Connor*, 363 Mass. 579 (1973). But, in this case, the architect did not expressly guarantee a specific result. He merely agreed to provide specifications. "When a party binds himself by contract to do a work or to perform a service, he agrees by implication to do a workmanlike job and to use reasonable and appropriate care and skill in doing it." *George* v. *Goldman*, 333 Mass. 496, 497 (1956), quoting *Abrams* v. *Factory Mut. Liab. Ins. Co.*, 298 Mass. 141, 143 (1937). Thus, the defendants provided only an implied warranty that they would exercise the standard of care required of their profession. In this circumstance, G. L. c. 260, § 2B, bars all the plaintiff's warranty claims. We conclude that the judge properly granted the defendants' motions for summary judgment.

*Judgment affirmed.*

governing tort claims. See, e.g., *Wolfe* v. *Ford Motor Co.*, *ante* 95, 98-99 (1982) (implied warranty); *Salem Orthopedic Surgeons, Inc.* v. *Quinn*, 377 Mass. 514 (1978) (express warranty).