CLARENCE C. COLBY, assignee, *vs.* THOMAS G. SHUTE & another.

Suffolk.    March 11, 1914. — November 23, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & CROSBY, JJ.

*Insolvency,* Rights of assignee. *Limitations, Statute of.*

Under Pub. Sts. c. 157, § 46, the first publication by the assignee of the estate of an insolvent debtor of notice of the issuing of the warrant or of the filing of the petition in the insolvency proceedings is notice to all the world of the change in the debtor's rights and title, and the failure by the assignee to cause the assignment to be recorded in the registry of deeds, as required by § 45 of the same chapter, does not prevent the vesting in such assignee of the title of the insolvent debtor to an undivided interest in certain real estate subject to a life tenancy; *and,* if the debtor's interest in the real estate is not listed in his schedule of assets and if no entry upon the real estate ever is made by the assignee after the termination of the life tenancy, these facts do not affect his title.

In a writ of entry for the recovery of an interest in real estate, brought by the assignee of the estate of an insolvent debtor, it is no defense that the demandant did not give notice of his appointment as required by R. L. c. 163, § 52, when the assignment to him of the property of the debtor was made by the judge of the court of insolvency; because the validity of proceedings in the court of insolvency cannot be questioned collaterally.

St. 1895, c. 432, § 1, which was approved on May 29, 1895, and took effect upon its passage, was as follows: "No assignee of an insolvent estate shall commence or be made a party to any action, suit or other proceeding, either at law or in equity, touching any property or right to property, legal or equitable, unless the same is brought within six years from the time when the same might have been brought; but no such action, suit or other proceeding, unless barred by provisions of law other than this statute, shall be barred before the expiration of one year from the passage of this act." This statute was repealed by R. L. c. 227; and R. L. c. 163, § 60, contains a substituted provision in different language prescribing the same period of limitation. The assignee of the estate of

an insolvent debtor, upon the death of the life tenant of certain real estate in 1894, acquired a right to enter the real estate and assert his title to an undivided interest therein which had vested in him as the property of the insolvent debtor. Although there was no fraudulent concealment, the assignee did not discover the existence of his title until 1913, when he asserted it for the first time by bringing a writ of entry to recover the undivided interest in the real estate. *Held*, that his action was barred by the limitation of six years contained in St. 1895, c. 432, which was not repealed until after the demandant's right of action had been barred by it.

WRIT OF ENTRY in the Land Court, dated February 27, 1913, by the assignee in insolvency of the estate of Robert J. Miller to recover one undivided third of a parcel of land with a dwelling house thereon on Dorchester Street in the part of Boston called South Boston.

In the Land Court the case was tried before *Clark*, J. The tenant Brooks was the holder of a mortgage upon the property and the tenant Shute was the owner, subject to such mortgage, of an undivided two thirds interest in the property, having been in possession of such undivided interest since 1904. The tenants claimed title to the undivided one third interest sought by the demandant through mesne conveyances from the insolvent, Robert J. Miller, by a deed made after his insolvency.

The tenants claimed title by mesne conveyances under a deed from Charles J. Miller and others to Josephine C. Cross, dated April 1, and recorded May 1, 1895. The title to the demanded premises was in Robert Miller at the time of his death on December 30, 1883. By his will, proved and allowed on January 28, 1884, he devised the demanded premises to his wife during her life, provided she remained unmarried, with the remainder over to his three children, who were Charles J. Miller, Robert J. Miller and Mary Maria Hanson. Robert J. Miller was adjudged insolvent in 1892, and all the property which he had on August 3, 1892, was conveyed and assigned to Herbert Wiswall, the duly appointed and qualified assignee in insolvency of Robert J. Miller's estate, but the assignment never was recorded in the registry of deeds. The demanded land was not included in his schedule of assets. The widow of Robert Miller died on September 22, 1894, without having remarried. Robert J. Miller and Charles J. Miller, the two sons of Robert Miller, then were living, but Mrs. Hanson had died, leaving two daughters, Matilda A. and Agnes M. In 1894

Robert J. Miller signed, sealed, acknowledged and delivered to Edward Gallagher a deed of one undivided third part of the demanded land, reciting that his title was derived from the estate of his deceased father, Robert Miller. On the same day Edward Gallagher signed, sealed, acknowledged and delivered to Georgiana Miller, the wife of Robert J. Miller, a deed of one undivided third part of the demanded premises. Both of these deeds were signed, acknowledged and recorded on September 24, 1894. By deed dated April 1, and recorded May 1, 1895, Charles J. Miller, Robert J. Miller and Georgiana Miller, his wife, in her right, and Matilda A. Hanson conveyed five undivided sixth parts of the demanded premises to Josephine C. Cross and by deed dated January 31, 1898, Agnes M. Hanson conveyed one undivided sixth part of the demanded premises to Josephine C. Cross. By deed dated August 6, 1904, Josephine C. Cross gave a deed of the whole of the demanded land to the tenant Shute. The tenant Brooks was the owner of a mortgage on the demanded land given by the tenant Shute to Sarah E. Living, dated August 15, 1904.

Herbert Wiswall, the assignee in insolvency, died on November 21, 1897. On November 27, 1912, Clarence C. Colby, the demandant, was appointed assignee in place of Wiswall, deceased. This appointment was made without notice to anybody.

The demanded premises, after the death of Robert Miller, were occupied by his widow and other members of his family down to the time of her death on September 22, 1894, then by Charles J. Miller for a few months, and since then by Josephine C. Cross and the tenant Shute down to the time of the filing of this writ. Since 1895 the taxes had been assessed to Cross or to Shute, respectively. No entry upon the land ever had been made by the assignee in insolvency of Robert J. Miller, and the assignee had no knowledge of the claim of the insolvent to the property in question until shortly before the filing of the writ.

In support of their first contention the tenants put in the testimony of Robert J. Miller and Edward Gallagher, who testified as to a conveyance from Miller to Gallagher previous to the recorded one, but on all the evidence the judge was not satisfied that said Miller executed and delivered any valid deed of his interest in the demanded land before the proceedings in insolvency, and

found that he did not make any such deed or conveyance prior to the insolvency proceedings.

The judge ruled (1) that Robert J. Miller's interest in the demanded premises passed to his assignee in insolvency by virtue of the assignment of the Court of Insolvency in 1892, notwithstanding that such assignment was not recorded in the registry of deeds; (2) that the appointment of the demandant as assignee of Robert J. Miller's insolvent estate by the Probate Court in 1913 could not be questioned by the tenants on the ground of want of notice; (3) that, as the demanded premises appeared of record, at the time of said appointment, to have been conveyed by the insolvent, the title to the land did not vest in the assignee under R. L. c. 163, §§ 80, 81; (4) that the right of possession of the demanded land accrued to Miller's assignee in insolvency on the death of the life tenant on September 22, 1894; and (5) that the assignee was barred from maintaining this action by the provisions of St. 1895, c. 432, (now, in different phraseology R. L. c. 163, § 60,) which is quoted in the opinion.

The judge ordered judgment for the tenants; and the demandant alleged exceptions to the third and the fifth of the rulings stated above.

*C. C. Colby,* (*D. A. Pfromm* with him,) for the demandant.

*A. P. Worthen,* for the tenants.

BRALEY, J. The original assignee held the reversionary interest of the insolvent debtor, subject to the outstanding life estate. Pub. Sts. c. 157, § 46. And the failure to record the assignment as required by § 45 did not affect the title. The first publication of notice of the issuing of the warrant under § 46, as held in *Hall* v. *Whiston,* 5 Allen, 126, 128, was "constructive notice to all the world of the change in the debtor's rights and title." It is immaterial, also, that the land had not been listed in the debtor's schedule of assets, or that no actual entry ever had been made. *Austin* v. *Cambridgeport Parish,* 21 Pick. 215, 224. *Hall* v. *Whiston,* 5 Allen, 126, 130. Pub. Sts. c. 173, § 3.

The life estate terminated on September 22, 1894. But, without having taken any steps to assert his title, the assignee died on November 21, 1897, and the demandant, having been appointed on November 27, 1912, seeks by this writ of entry to recover the undivided one third interest of the insolvent in the demanded

premises. R. L. c. 179, §§ 1–7. *Davis* v. *Newton,* 6 Met. 537, 540, 541. *Smythe* v. *Sprague,* 149 Mass. 310, 312. The tenants, who respectively are seised in fee and in mortgage of two undivided thirds, claim title to the remaining third under mesne conveyances from the debtor made subsequently to his insolvency.

It is no defense, that notice of the demandant's appointment was not given as required by R. L. c. 163, § 52. The jurisdiction of the court of insolvency cannot be questioned collaterally. *Howes* v. *Burt,* 130 Mass. 368.

If without deciding it is assumed, as the demandant contends, that the third ruling was wrong and that upon appointment he succeeded by operation of law to the title of the former assignee, the question for decision is, whether the fifth ruling that the action is barred by St. 1895, c. 432, § 1, was right. See *Bemis* v. *Smith,* 10 Met. 194; *International Trust Co.* v. *Boardman,* 149 Mass. 158; R. L. c. 163, §§ 74, 76, 80.

Before the enactment of this statute no corresponding provision appears in our laws, and a writ of entry could have been maintained at any time within a period of twenty years from the death of the tenant for life. Pub. Sts. c. 173, § 3. R. L. c. 179, § 4. Pub. St. c. 196, § 1. R. L. c. 202, § 20. But the Legislature may reduce the period of limitation within which an existing cause of action may be brought, if reasonable provision is made for opportunity to bring suit upon claims before they are barred, and the statute in question is applicable to rights previously vested, as well as to rights subsequently acquired. *Mulvey* v. *Boston,* 197 Mass. 178. St. 1895, c. 432, § 1, is in these words: "No assignee of an insolvent estate shall commence or be made a party to any action, suit or other proceeding, either at law or in equity, touching any property or right to property, legal or equitable, unless the same is brought within six years from the time when the same might have been brought; but no such action, suit or other proceeding, unless barred by provisions of law other than this statute, shall be barred before the expiration of one year from the passage of this act." The Pub. Sts. c. 157, which were in force during the lifetime of the first assignee, prescribe a period of six months in which the second and third meetings are to be held, the accounts of the assignee presented and allowed, a divi-

dend declared and the question of the debtor's discharge determined.  If litigation is necessary to recover any portion of the estate the statute is intended to prevent prolonged delay, while not unreasonably restricting the time within which the assignee must assert by suit his rights "touching any property or right to property, legal or equitable," passing to him under the assignment. The intention of the Legislature is to be ascertained from the language used, and no distinction is found between adverse claims to the debtor's property, held by the assignee, arising after, and adverse claims existing before the assignment.  R. L. c. 8, § 4, cl. 3. If resort to a legal contest becomes necessary, the assignee must enforce his rights within the period named.  It is true the property was not scheduled, nor was it discovered until shortly before the action was brought.  The omission, however, is not stated to have been fraudulent or intentional, and fraud cannot be presumed.  *Whiton* v. *Nichols*, 3 Allen, 583.  If fraudulent concealment appeared, the question whether the statute would begin to run until discovery of the fraud by the assignee would be presented. *Farnam* v. *Brooks*, 9 Pick. 212, 244.  *Nudd* v. *Hamblin*, 8 Allen, 130.  *Kenyon* v. *Wrisley*, 147 Mass. 476.  It is not open on the record.  By § 3 the act took effect upon its passage.  It was approved on May 29, 1895, and an action could have been brought at any time before September 22, 1900.  R. L. c. 8, § 1.  The proviso applies only to actions which otherwise would have been outlawed by force of the statute within the year from the date of enactment.  *Brigham* v. *Bigelow*, 12 Met. 268.  *Sohn* v. *Waterson*, 17 Wall. 596.  By R. L. c. 227, the statute was repealed, but, as the limitation, which began to run on September 22, 1894, had then expired, the remedy had been barred before the demandant's appointment.  *Allis* v. *Moore*, 2 Allen, 306.  R. L. c. 226, § 1. And the argument of counsel for the demandant concerning the provisions of R. L. c. 163, § 60, or of § 2 of the bankruptcy act of 1867 and its construction in *Dushane* v. *Beall*, 161 U. S. 513, and *Hammond* v. *Whittredge*, 204 U. S. 538, need not be considered.

*Exceptions overruled.*