JUNE SALINSKY & another[1] vs. PERMA-HOME CORPORATION.

Essex. October 14, 1982. — January 20, 1983.

Present: HALE, C.J., CUTTER, & PERRETTA, JJ.

*Limitations, Statute of. Fraud.*

In an action for deceit arising out of a seller's installation of aluminum siding on the plaintiff's home in 1958 and the plaintiffs' discovery in 1971 of defects in the siding, G. L. c. 260, § 12, was not applicable to toll the relevant limitation period where the record disclosed no affirmative act of fraudulent concealment of the cause of action by the seller, nor any fiduciary relationship between the seller and the plaintiffs which would have given rise to a duty of disclosure. [196-198]

General Laws c. 260, § 2B, a statute of repose which places a time limit on the tort liability of building contractors and which first took effect in 1968, was applicable to bar a claim against a seller of aluminum siding who had completed installation of the siding on a residential property in 1958. [198-199]

CONTRACT OR TORT. Writ in the Superior Court dated January 30, 1973.

The action was tried before *Forte*, J.

*Bruce N. Sachar* for the plaintiffs.

*Santo J. Ruma* for the defendant.

CUTTER, J. The evidence in this action would permit the jury to make the following findings.

A. In July, 1958, Perma-Home Corporation (the seller) installed aluminum siding on a house in Marblehead owned by the Salinskys. Mrs. Salinsky, who had seen advertising of Alcoa aluminum siding, had consulted the seller. One Caplan, then the owner of the seller, came to see the Salinskys. He gave them a quotation for Alcoa siding and quoted a "lesser figure" for "a different type of aluminum siding."

---

[1] Samuel Salinsky.

Mrs. Salinsky did not choose the less expensive type. Later Caplan returned with an agreement which he read to the Salinskys. They did not read the agreement but signed it. The agreement was on a printed form with certain blanks filled in by somewhat illegible handwriting. Mrs. Salinsky could not find her copy of the agreement. A photocopy, obtained from the bank which handled the financing, was introduced in evidence. [Examination of the copy of the agreement[2] before us leaves doubt whether it called for Alcoa siding or Alcon siding.][3]

B. Installation of the siding took about six weeks. Mrs. Salinsky was then working for her husband from 9:00 A.M. to 5:00 P.M. The seller's workmen, however, sometimes arrived at her house to drop off supplies before she left for work. Cartons of siding were stored in the Salinskys' garage or on the driveway. Mrs. Salinsky could not remember whether there was writing on the cartons although "[t]here may have been."

C. Partly surrounding the house in 1958 were "big tall trees." These were cut down in June, 1971. It was then, so Mrs. Salinsky testified, that she first noticed brown dirt discoloration and pitting of the siding, although she had lived in the house and, for thirteen years, in all seasons, had

---

[2] The contract provided, "This contract contains the whole agreement with us. Company [i.e. the seller] will furnish its customary guarantee adjusted to the type of work done on above property upon completion of this contract." No such guarantee was introduced in evidence and we have no knowledge whether such a guarantee was given or what its terms were if one was given.

[3] The copy of the agreement in the record is not easy to read. The panel thinks it likely that the original read "Alcon" rather than "Alcoa" but we are not by any means certain of this. If the Salinskys' lost copy was no more legible than that in the record, there was real need for inquiry and clarification. If it clearly read "Alcoa," the occasion for inquiry, of course, would have been less. After the construction was completed, the Salinskys could not reasonably have been expected to remove a piece of siding to examine it to determine whether it was Alcoa aluminum or siding of some other producer. Even the experts apparently had some difficulty in making this determination after a piece of siding had been removed for their examination.

looked at the siding and "watered it down." She complained to Alcoa, whose representative, after examining the house, determined that the siding was not an Alcoa product. The parties stipulated that the siding was not Alcoa siding. If the siding had been an Alcoa product, the discoloration, a result of corrosion and mildew, might not have occurred because Alcoa siding (so it was testified) is treated chemically with a special process unique to Alcoa. Mrs. Salinsky then got in touch with the seller.

This action against the seller was started on January 30, 1973. In two counts it was alleged (1) that the seller knowingly made fraudulent misrepresentations and warranties upon which the Salinskys relied to their detriment, and (2) that the seller represented that it would use Alcoa siding and negligently installed an inferior product on the Salinskys' house. The seller denied the Salinskys' allegations and asserted several defenses, including various statutes of limitation. At the close of the Salinskys' evidence, the seller filed a motion for a directed verdict. As to count 1, the motion purported to be based on G. L. c. 260, § 2, under which the action should have been commenced within six years from July 25, 1958. With respect to count 2, it was asserted that (under c. 260, § 2A, prior to its amendment by St. 1973, c. 777, § 1) the action should have been commenced within two years from July 25, 1958. The seller also claimed that under both counts there was no compliance with the time limit set out in c. 260, § 2B. Without objection by counsel, the case was submitted to the jury on count 1, essentially only as an action alleging deceit (and thus a tort) and on instructions which did not deal in any direct way with any questions under any statute of limitations.

The jury returned a verdict for the Salinskys of $7,000 on count 1, and a verdict for the seller on count 2. There was evidence that the cost of removing the present siding and replacing it with Alcoa siding would be about $7,000.

After the verdicts were returned, the seller filed a motion for judgment in its favor notwithstanding the verdict on

count 1. The motion referred to the grounds set forth in the seller's earlier motion for a directed verdict.[4] The trial judge granted the motion, and then in effect merely stated to the jury that the Salinskys' claim was barred by a statute of limitations. It thus is necessary to determine whether any of such statutes possibly applicable was tolled during the thirteen years from the installation of the siding in 1958 until 1971, when the Salinskys cut down their trees and first noticed the discoloration and pitting. The period exceeded the six-year limitation period in G. L. c. 260, §§ 2 and 2B. The Salinskys have the burden of proving that the injuries of which they complain arose within the applicable period of limitation prior to initiation of this action. See *Frank Cooke, Inc.* v. *Hurwitz,* 10 Mass. App. Ct. 99, 110 (1980). See also *Friedman* v. *Jablonski,* 371 Mass. 482, 487-488 (1976).

1. The Salinskys rely on G. L. c. 260, § 12, which provides that, if "a person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action." In the absence of a fiduciary relationship between the seller and the Salinskys, the record contains no evidence permitting a finding of fraudulent concealment. The Salinskys were given a copy of the contract which they later lost. They could have read it at any time and, if its contents contradicted their view of the arrangement or if their copy was illegible, they could have sought clarification from the seller. The siding actually installed was delivered in cartons over a substantial period of time, and the siding, the cartons, and their markings (if any) could have been examined by the Salinskys. If it be

---

[4] The judge had submitted the case to the jury in the hope that he thereby would avoid a retrial in the event that on appeal his action on the motion should be held to have been error. See *Soares* v. *Lakeville Baseball Camp, Inc.,* 369 Mass. 974, 975 (1976).

assumed, as the jury found, that there was initial fraud in the sale of the siding, that did not amount to fraudulent concealment under § 12. *Connelly* v. *Bartlett,* 286 Mass. 311, 317-320 (1934). *Frank Cooke, Inc.* v. *Hurwitz,* 10 Mass. App. Ct. at 109.[5] In Massachusetts mere silence is not ordinarily a fraudulent concealment. There must be some affirmative act of concealment of the cause of action. *Stetson* v. *French,* 321 Mass. 195, 198 (1947). *White* v. *Peabody Constr. Co.,* 386 Mass. 121, 133 (1982).

2. No fiduciary relationship between the seller and the Salinskys was shown. There was no family relationship, nor any basis of confidence and reliance (see *Stetson* v. *French,* 321 Mass. at 199), or professional relationship (cf. *Maloney* v. *Brackett,* 275 Mass. 479, 482-484 [1931]), or continuing duty to disclose (see *Lynch* v. *Signal Fin. Co.,* 367 Mass. 503, 507-508 [1975]). This also was not a case of professional malpractice. *Franklin* v. *Albert,* 381 Mass. 611, 618-620 (1980). *Teller* v. *Schepens,* 381 Mass. 621, 622-623 (1980). See *Hendrickson* v. *Sears,* 365 Mass. 83, 89-90 (1974). The concept of fiduciary relationship thus far does not seem to have been extended to purely commercial transactions. See *Kent* v. *Dupree,* 13 Mass. App. Ct. 44, 47 (1982). Compare *Friedman* v. *Jablonski,* 371 Mass. at 485-486 (involving no fiduciary relationship, in which it was said that "to the extent that any misrepresentation concerns a fact which was "inherently unknowable by the plaintiffs,"[6] a cause of action for deceit in the sale of

---

[5] By contrast the Federal rule is "established with more liberality than . . . [the law] of Massachusetts." Under the Federal rule, "where fraud is involved the cause of action is . . . automatically concealed, and does not arise until discovery." See *Janigan* v. *Taylor,* 344 F.2d 781, 784 (1st Cir.), cert. denied, 382 U.S. 879 (1965); *Cook* v. *Avien, Inc.,* 573 F.2d 685, 694-695 (1st Cir. 1978). See also *Tracerlab, Inc.* v. *Industrial Nucleonics Corp.,* 313 F.2d 97, 98-101 (1st Cir. 1963).

[6] The decided cases give little guidance about what is an "inherently unknowable" cause of action. Cause to inquire about facts giving rise to the cause of action may be sufficient to prevent tolling or extensions of the period of a statute of limitations. See *White* v. *Peabody Constr. Co.,* 386 Mass. at 129-130; *Dinsky* v. *Framingham,* 386 Mass. 801, 803-804 (1982);

real estate should accrue when the buyer learns, or reasonably should have learned, of the misrepresentation).[7]

3. The trial judge correctly could have ordered judgment for the seller notwithstanding the verdict on count 1, because the governing statute of limitations or repose was G. L. c. 260, § 2B. See St. 1968, c. 612, since amended by St. 1973, c. 777, § 2. Since 1968, § 2B has provided that actions "of tort for damages arising out of any deficiency . . . in the . . . construction . . . of an improvement to real property" in no event shall be commenced "more than six years after the performance or furnishing of such . . . construction . . . ." *White* v. *Peabody Constr. Co.*, 386 Mass. at 129, recognized that § 2B "clearly establishes some variant of the discovery rule for design and construction negligence cases" but (on the facts of that case) had no occasion to consider fully the explicit statutory language just quoted. Section 2B, however, was dealt with thoroughly in *Klein* v. *Catalano*, 386 Mass. 701 (1982), decided more than a year after the 1981 trial of this case.[8] See also *King's Dept. Stores, Inc.* v. *Poley Abrams Corp.*, 386 Mass. 1008 (1982).

---

*Mansfield* v. *GAF Corp.*, 5 Mass. App. Ct. 551, 553-555 (1977); *Frank Cook, Inc.* v. *Hurwitz*, 10 Mass. App. Ct. at 108-111. Compare the treatment in *Friedman* v. *Jablonski*, 371 Mass. at 486, of representations about a right of way, presumably verifiable from public records, and that of representations about an artesian well, not as readily subject to verification. Compare also *Cannon* v. *Sears, Roebuck & Co.*, 374 Mass. 739, 740-743 (1978); *Nantucket* v. *Beinecke*, 379 Mass. 345, 350-352 (1979).

[7] The discussion in parts 1 and 2 of this opinion, *supra*, establishes only that § 12, in any event, has no application to this case because the record discloses (a) no affirmative fraudulent concealment of the cause of action by the seller, and (b) the absence of any traditional form of fiduciary relationship between the seller and the Salinskys. Whether the Salinskys' claim rested on any foundation "inherently unknowable" becomes irrelevant in view of our conclusion (see part 3 of this opinion, *infra*) that recovery in this action is barred by G. L. c. 260, § 2B. We thus have no occasion to consider whether § 12 affects § 2B in any manner.

[8] The seller in motions presented to the trial judge relied on § 2B but on appeal did not argue that § 2B was controlling, probably because the *Klein* case was not decided until July 7, 1982.

We think that the *Klein* case applies to the present litigation about the 1958 agreement, which we regard as, in all important respects, a contract for services and construction.[9] Cf. *Raffel* v. *Perley*, 14 Mass. App. Ct. 242, 243-247 (1982). To apply § 2B to the installation of the siding is wholly consistent with the apparent purpose underlying the sections. See the *Klein* case at 704-705, and 708-711. Even though the Salinskys' claim was based on work completed long before 1968,[10] (when § 2B first took effect), § 2B, as a statute of "repose" (*Klein* case at 702) may be applied to such completed events. See the *Klein* case at 705-706.

4. In view of the *Klein* case and § 2B, we need not consider (a) whether the jury, as finders of the fact, might reasonably have concluded that the Salinskys were not put on inquiry about deficiencies in the siding until the trees came down in 1971 and that the use of other than Alcoa siding was "inherently unknowable" in the circumstances; or (b) whether that question was for determination by the jury. See *Abele* v. *Dietz*, 312 Mass. 685, 690 (1942); *Mendes* v. *Roche*, 317 Mass. 321, 323-324 (1944); *West Roxbury Coop. Bank* v. *Bowser*, 324 Mass. 489, 490-491 (1949).

*Judgment affirmed.*

---

[9] No contention appears to have been made in the Superior Court, and none has been made in this court, that the applicable statute of limitations was that contained in G. L. c. 106, § 2-318, as amended through St. 1974, c. 153, or in § 2-725. Thus we do not consider whether the agreement could be regarded as a sale of the siding as goods. See c. 106, § 2-105(1). The *Klein* case, at 718-720, in any event, indicates that any claims for breach of warranty would be barred by § 2B.

[10] Even if § 2B were to be viewed as comparable to a traditional statute of limitations, the Salinskys were afforded a reasonable period of ninety days to bring an action between the approval of St. 1968, c. 612, and its effective date. See art. 48, The Referendum, I, of the Amendments to the Massachusetts Constitution; *Opinion of the Justices*, 368 Mass. 889, 891 n.4 (1975). See also *Mulvey* v. *Boston*, 197 Mass. 178, 182-185 (1908); *Cunningham* v. *Commonwealth*, 278 Mass. 343, 345-346 (1932); *Cioffi* v. *Guenther*, 374 Mass. 1, 3-4 (1977). See also *Lewis* v. *Crowell*, 205 Mass. 497, 500-501 (1910); *Colby* v. *Shute*, 219 Mass. 211, 215-216 (1914); *Evans* v. *Building Inspector of Peabody*, 5 Mass. App. Ct. 805, 806 (1977).