Sherman, PJ.
This is an action for breach of an equipment lease in which plaintiff-lessor, Eaton Financial Corporation (“Eaton”), seeks recovery of a deficiency balance under the lease and costs and charges incurred in the repossession and sale of the leased equipment
Defendant-lessee, Dennis Dunlavey (“Dunlavey”), admitted his execution of the equipment lease, but advanced various affirmative defenses and counterclaims in which he alleged that the equipmentwas defective; that it had not been repossessed, but was instead returned in cancellation of his obligations to all parties; that there was a novation; and that Eaton breached applicable warranties and committed acts violative of G.Lc. 93A, §11 in both its leasing and repossession of the equipment.
Dunlavey also filed a third party claim again st Auto motive Testing Equipment, Inc. (“ATE”), the equipment sales entity and supplier, seeking damages for ATE’s alleged negligent repair of the equipment, fraud, breach of express and implied warranties, and violations of G.Lc. 93A. The third party claim included demands for indemnification and contribution.
The reported evidence indicates that the underlying transaction from which this suit arose was one fairly typical in daily commerce. Dunlavey owned and operated a gasolineand automobile service station in Lowell, Massachusetts. He contacted ATE, an authorized sales representative of Allen Test, Inc., about the possible purchase of a computerized automobile engine diagnostic machine manufactured by Allen Test and known as the “Allen Smart Scope” (“scope” or “equipment”). Because Dunlavey was unable to meet the $24,000.00 to $25,000.00 purchase price of the scope, ATE suggested that Dunlavey “rent” the same and receive a credit of $2,000.00 by trading in his used engine analyzer.
Without informing Dunlavey, ATE then contacted plaintiff Eaton Financial Corporation. Eaton appears to be a quasi-finance company whose activities include the purchase of equipment for long-term lease to businesses which lack sufficient available cash or which are unable to obtain conventional financing for the purchase of expensive equipment Neither Allen Test, Inc., nor ATE, has any corporate *179 affiliation or connection to Eaton. ATE arranged for the sale of a scope and the transfer of title to Eaton at a cost of $22,900.00 which reflected a $2,000.00 credit to Eaton for the value of Dunlavey’s used analyzer which ATE had acquired.
On October 30, 1984, ATE brought the new scope to Dunlavey’s station and presented a standard form Eaton rental agreement. When Dunlavey inquired about the Eaton name on the document, ATE informed him that Eaton was the same company as ATE and that he should not worry. Dunlavey then executed the lease, believing that he was buying the scope from ATE and was receiving a $2,000.00 credit for the trade-in of his used analyzer.
The equipment lease was for a four year term at a monthly rental of $672.69 plus $33.63 in tax. The base price of the equipment was not disclosed.
The terms and conditions of the written lease included Eaton’s disclaimer of all express and implied warranties; Eaton’s disclaimer of the agency of any salesman or supplier, a provision for Eaton’s collection of all costs and expenses, plus reasonable attorneys’ fees upon lessee’s default or equipment repossession; Dunlavey’s waiver of all rights, including those conferred by statute, which would limit Eaton’s election to sell, lease, use or otherwise dispose of the equipment upon repossession; and Dunlavey’s acknowledgment that “no representation as to the equipment or any other matter by the supplier shall in any way affect the renter’s obligations to perform including the payment of the rent...”
Upon Dunlavey’s execution of the lease, ATE installed the equipment and trained Dunlavey in its use. Operating problems arose immediately, however, at the time of the October 31,1984 installation, and various malfunctions later occurred on November 6,1984, December 6,1984, March 4,1985, April 11,1985 and May 31,1985. An ATE representative repaired the scope on each of these dates without charge to Dunlavey under what the trial court described as a “warranty.”
TimelyrentalpaymentsweremadebyDunlaveythroughJune5,1985. OnJune27, 1985, Dunlavey notified Eaton that the scope was defective and that he was exercising his “right” to cancel the lease because of Eaton’s breach. In August, 1985, Eaton informed Dunlavey that his rental payments were two months in arrears. Dunlavey offered to continue payments under the lease if a new scope were provided and ATE paid the rent arrearages. This offer was rejected, and Eaton notified Dunlavey that the scope would be repossessed. The equipmentwas repossessed on September 5,1985 and eventually sold on September 27,1988 for $10,000.00. Eaton forward a Notice of Sale and demand for payment of a $20,405.60 deficiency. Dunlavey refused to remit payment, and this action ensued.
On Eaton’s and Dunlavey’s respective complaint and counterclaim, the trial court found, inter alia:
A) Because of the clear terms of the Rental Agreement, Dunlavey was not excused from paying any rent due to any defect in the scope.
B) Dunlavey is not excused from paying any rent for any misrepresentation made by ATE, nor for any breach of an express or implied warranty, which was made by ATE. Eaton made no warranties with Dunlavey, either express or implied....
D) There was no novation whereby Eaton agreed to ‘cancel’ the lease with Dunlavey.
E) The defense of no notice of repossession is denied. Dunlavey ... was aware that Eaton had aright to obtain [thescope] on a repossession and had actual notice of same....
Despite these findings and rulings, the court concluded that Eaton could not recover on its complaint for a lease deficiency against Dunlavey because: 1) Eaton’s *180 repossession activities were not “appropriate,” and Eaton thus failed to establish the correct deficiency amount; 2) Eaton had unfairly and deceptively failed to give Dunlavey a $2,000.00 lease credit for his equipment trade-in, or to disclose that it had given such credit; and 3) that such violation of G.Lc. 93A, §11 constituted an equitable defense which permitted Dunlavey to cancel the contract and which precluded Eaton from collecting any damages for Dunlavey’s breach thereof. Judgment was entered for Dunlavey on Eaton’s complaint, and on Dunlavey’s c. 93A counterclaim in the amount of $2,000.00 plus $3,000.00 in attorney’s fees. Judgment was also entered for third-party defendant ATE.
Eaton thereafter moved for a new trial on the grounds that the court’s findings, rulings and judgments were inconsistent. The court denied Eaton’s new trial request, but amended its findings, rulings and judgment on the third-party complaint The court found that ATE was not negligent in its repair of the scope; that although ATE had breached implied warranties, Dunlavey had failed to prove what damages he had suffered in consequence thereof; and that ATE had violated G.Lc.93Aby reducing the cost of the scope by $2,000.00, thereby giving Eaton the benefit of Dunlavey’s equipment trade in without Dunlavey’s consent or knowledge. The court awarded Dunlavey $2,000.00 in damages and $3,000 in attorney's fees,, with the order that Dunlavey was limited to but one recovery.
Both Eaton and ATE thereafter claimed an appeal to this Division. For reasons neither stated in, nor warranted by, the record in this case, two separate reports of issues arising in this single action were settled and forwarded to this Division.
EATON’S APPEAL In the first report before this Division, Eaton claims to be aggrieved by the court’s judgment for Dunlavey on both Eaton’s complaint and Dunlavey’s G.Lc. 93A counterclaim. The scope of appellate review to which Eaton is entitled is necessarily confined to those issues raised and preserved by Eaton in the trial court Wesley v. Marsman, 393 Mass. 1003 (1984). Eaton claims to be aggrieved by the court’s denial of nine of its requests for rulings and its new trial motion; Excluding the court’s proper denial of those requests which sought findings of fact rather than rulings of law (numbers 6,7,20 and 21), Dist./Mun. Cts. R. Civ. P., Rule 52 (a), Liberatore v. Framingham, 315 Mass. 538, (1944), Waters & Brown, Inc. v. Boston Better Bus. Mach. Co., 1984 Mass. App. Div. 159, 160, Eaton’s remaining requests for rulings and Dist./Mun. Cts. R. Civ. P., Rule 59 motion raise issues of whether the evidence required a finding for Eaton as a matter of law, and whether the court’s ultimate findings for Dunlavey were erroneously predicated on inconsistent subsidiary findings and rulings.
1. Eaton was clearly entitled as a matter of law to judgment in its favor on its complaint against Dunlavey. Dunlavey signed and executed the equipment rental agreement and was thus bound by its unequivocal terms. See generally, Coupounas v. Madden, 401 Mass. 125, 128 (1987); Mayflower Seafoods, Inc. v. Integrity Credit Corp., 25 Mass. App. Ct. 453, 459 (1988). The trial court found upon uncontroverted evidence that Dunlavey made only seven (7) of the forty-eight monthly rental payments required under the lease. The court also found that no novation or cancellation of the lease was effected, and that Eaton was entitled to repossess the equipment The “clear terms” of the parties’ lease required the court’s additional findings that Dunlavey’s obligation to make rental payments was not excused either by any defect in the equipment, for which no warranties were given by Eaton, or by any conduct or representations by ATE, which were disclaimed by Eaton. The court’s subsidiary findings andrulings should, therefore, have resulted in afinding of Dunlavey’s liability to Eaton on its complaint for a lease payment deficiency.
The trial court erred, however, in then rendering an inconsistent judgment against Eaton on the grounds that certain acts or omissions by Eaton, violative of c. 93A, constituted an “equitable defense” which cancelled, rescinded or voided the parties’ equipment rental agreement Although equitable defenses may be raised in a district court proceeding, G.Lc. 231, §31, G.Lc. 93A, §3 did notpermitthe district court in this *181 case to grant equitable relief by way of rescission solear on the b asis of plaintiffs unfair and deceptive acts. See Paquin v. Arruda, 1983 Mass. App. Div. 277, 279. Chapter 93A is not an equitable or legal defense to contract liability, but is a separate cause of action or statutory remedy. Although a defendant’s counterclaim recoveiy of c. 93A damages may, in set off, reduce his monetary liability under the plaintiffs complaint for breach of contract, the G.Lc. 93A finding in the defendant’s favor does not automatically excuse his contract breach or necessarily void the parties’ contract In the instant case, Eaton’s failure to disclose how or if it gave Dunlavey the benefit, under the parties’ lease, of his $2,000.00 trade-in was not conduct analogous to fraud in the inducement, mutual mistake or other contract defense which could have been asserted by Dunlavey to nullify the lease. See Schmidt v. Kardos, 1987 Mass. App. Div. 198, 199. Dunlavey negotiated the equipment lease with ATE, not with Eaton, and all representations by ATE were expressly disclaimed by Eaton.
Dunlavey’s liability herein was also unaffected by the manner in which Eaton conducted the repossession and sale of the leased equipment. First, the parties’ equipment rental agreement was not a secured transaction governed by Article 9 of the Uniform Commercial Code. Eaton Financial Corp. v. Dewar, 1990 Mass. App. Div. 156. See, generally, Patriot General Life Ins. Co. v. CFC Investment Co., 11 Mass. App. Ct. 857, 862-863 (1981). Thecourt’s apparent application of the repossessionstandards of G.Lc. 106, §§9-504,9-507 to Eaton’s conduct hereinwas thus error.[2] Second, Eaton’s repossession and sale of the leased equipment could not be deemed a breach of implied contract covenants of good faith and fair dealing. Paragraph 12 of the equipment lease not only accorded Eaton almost unfettered latitude and discretion in disposing of the equipment, but also set forth Dunlavey’s waiver of all repossession related defenses.[3]
In short, the evidence introduced at trial required a finding for Eaton on its complaint against Dunlavey for a lease deficiency and related repossession costs and charges. The trial court’s entry of judgment for Dunlavey must be reversed.
2. Eaton also claims to be aggrieved by the trial comb’s finding for Dunlavey on his G.Lc. 93A, §11 counterclaim against Eaton. There was no error, however, in the court’s denial of Eaton’s requests numbers 22 and 23 which sought a ruling that a finding in Eaton’s favor under G.Lc. 93A was required as a matter of law.
Whether specific conduct is so unfair and deceptive as to be actionable under G.Lc. *182 93A, §11 is customarily a question of fact for a trial court. See, e.g., Levings v. Forbes & Wallace, Inc., 8 Mass. App. Ct. 498, 504 (1979). The court herein found that Dunlavey traded a used engine analyzer with ATE to obtain a credit of $2,000.00 on his lease of the scope, thatthe $2,000.00 creditwas then given to Eaton in its purchase of the scope at a reduced price, and that Eaton failed to disclose how, or if, it applied the $2,000.00 in calculating the lease payment terms imposed on Dunlavey. Consistent with these subsidiary findings, the court also concluded that neither ATE, nor Eaton, ever gave Dunlavey a lease credit of $2,000.00.
Eaton argues that such findings are clearly erroneous because it actually leased the scope to Dunlavey based on the reduced $22,900.00 purchase price it paid to ATE and thus gave Dunlavey a $2,000.00 lease credit'in the form of areduced equipment lease price. Eaton’s assertion, however, simply begs the question at hand, and is unsupported by any evidence reported to this Division. The lease itself merely indicates a 48 month term and a monthly rental amount. It is impossible to determine arithmeti-callyfromthe total of 48 lease paymentswhat equipment base price wasused and thus whether such price reflected a $2,000.00 credit in Dunlavey’s favor.
It is thus evident that the very terms of the parties’ written equipment lease supported, if not required, the trial court’s subsidiary finding of nondisclosure by Eaton of its disposition of the $2,000.00 sum in question, and amply warranted the court’s reasonable, further inference that Eaton in feet failed to give a $2,000.00 lease credit to Dunlavey.[4] Given the absence of evidence requiring a contrary determination, the court’s subsidiary findings of fact must stand.
Having made a factual determination as to Eaton’s treatment and disposition of Dunlavey’s $2,000.00 trade-in entitlement, the court was then warranted in finding that such conduct violated c. 93A, §§2,11. Conduct proscribed by c. 93A is that which is “within ‘at least the penumbra of some common-law, statutory or other established concept of unfairness.’” Chamberlayne School v. Boston, 30 Mass. App. C. 346, 353 (1991), quoting irom Zayre Corp. v. Computer Sys. of America, Inc., 24 Mass. App. Ct. 559, 570 (1987) and Levings v. Forbes & Wallace, supra at 503-504.
As the evidence adduced at trial did not require a finding in Eaton’s favor on Dunlavey’s c. 93A counterclaim, there was no error in the court’s denial of Eaton’s requests for a required finding. The court’s judgment for Dunlavey on his counterclaim is hereby affirmed.
ATE’S APPEAL In the second report presented to this Division, third-party ATE charges error in the court’s failure to dismiss the third-party complaint on the grounds of the Statute of limitations which ATE raised by affirmative defense in its answer, by pretrial motion to dismiss and by a request for ruling of law. We hold that Dunlavey’s third-party claims against ATE were time barred under G.L.c.260, §5A, and that the third parly complaint should have been dismissed.
Dunlavey’s third-party claim sought actual and punitive damages, contribution and indemnification for ATE’s alleged negligent repair of the leased scope, fraud, breach of warranties and violation of c. 93A, §11. The trial court found that ATE was not negligent in its repair of the scope and that Dunlavey had failed to prove any damages for ATE’s breach of implied warranties. The court entered judgment against ATE *183 solely on Dunlavey’s G.Lc. 93A claim.[5]
Pursuant to G.Lc. 260, §5A, an action to recover for unfair and deceptive practices violative of G.Lc. 93A “shall be commenced onlywithinfouryears next afterthe cause of action accrues.” The accrual date of a c. 93A cause of action is governed by those general principles which determine the accrual of actions for similar or underlying claims. Hanson Housing Auth. v. Dryvit Syst., Inc., 2d Mass. App. Ct. 440, 448 (1990). The trial court ruled that Dunlavey’s c. 93A claim was based on ATE’s non-disclosure and handling of Dunlavey’s $2,000.00trade-in credit. Dunlavey’s c. 93 Aclaim was thus in the nature of an action for fraud or misrepresentation against ATE.
As the actual cost of the scope as leased by Eaton and the disposition of Dunlavey’s $2,000.00 by Eaton and ATE were not “inherently unknowable” matters, see Id. at444-445, any cause of action for ATE’s fraud or misrepresentation accrued when Dunlavey knew or reasonably should have known of ATE’s unfair and deceptive conduct: See Graveline v. Bay Bank Valley Trust Co., 19 Mass. App. Ct. 253, 254-255 (1985). Dunlavey had reasonable “cause to inquire about facts giving rise” to a potential legal action, Salinsky v. Perma-Home Corp., 15 Mass. App. Ct. 193, 197 n.6 (1983), when presented with the Eaton standard form equipment lease on October 31,1984. Such lease listed Eaton, not ATE, as the contracting party, provided for a rental, rather than a sale, of the scope; and failed to reference Dunlavey’s equipment trade-in or any dollar value for the same. Dunlavey’s cause of action thus accrued on October 31,1984.
As four years and seven months then elapsed before Dunlavey filed his third-party complaint against ATE on June 22,1989, such claim was time-barred by the G.Lc. 260, §5A four year statute of limitations. Judgment for Dunlavey against ATE must, therefore, be reversed.[6]
Accordingly, the trial court's judgment for Dunlavey on plaintiff Eaton’s complaint is reversed, and judgment is to be entered for the plaintiff in the amount of its claim. The court’s judgment for Dunlavey on his G.Lc. 93A counterclaim against Eaton is hereby affirmed. The court’s judgment for Dunlavey against third-party defendant ATE is vacated, and an order dismissing the third-party complaint is to be entered. So ordered.

 The court found: “Eaton’s efforts to find a buyer for the scope by putting same in its office with a FOR SALE sign on it was not proven to be reasonable. No evidence was presented that this was a proper marketing of the scope showing that any buyers would normally be entering its office looking to buy said scope. No evidence was presented on the specifics of Eaton’s advertising this scope for sale, at what price or terms. I thus find that the efforts of Eaton to sell the scope were not appropriate and that the sale over three years later was not appropriate. No evidence was presented as to the fair marketvalue of the scope about September, 1985 or shortly thereafter or that there was no market for the scope until September, 1988.”

 “Any repossession, resale... of any Equipment by Lessor shall not be abar to the institution of litigation by. Lessor against Lessee for damages for breach of this Lease...
“With respect to any Equipment... repossessed by Lessor... Lessor may hold or use such Equipment for any purpose whatsoever, or may sell same at a private or public sale, for cash or credit or may re-lease same for such term and upon such lease payment as shall be solely determined by Lessor. In the event of the sale... of any such Equipment, Lessee shall be liable ... in addition to the entire amount of unpaid lease payments... the sum of twenty percent (20%) of the actual cost to Lessor of such equipment, plus all other unpaid sums or charges that accrued prior to the date of Lessee’s default, less the proceeds of any sale or releasing of such Equipment, after first deducting therefrom all costs and expenses incurred in repossession, storage, repairs, reconditioning, sale, re-leasing, attorney’s fees and collection fees with respect to such Equipment.
"To the extent permitted by applicable law, Lessee hereby waives any rights now or hereafter conferred by statute or otherwise which may. require Lessor to sell, lease or otherwise use any equipment in mitigation of Lessee’s damages....”

 It is unnecessary to reach the issue of whether Eaton’s failure to disclose how it handled Dunlavey’s $2,000.00 was per se a violation of G.L.c. 93A It may be noted that a failure to disclose “any fact, the disclosure of which may have influenced the buyer or prospective buyernottoenter the transaction” is a violation of G.Lc.93A §§2,11. 940CMR3:16(2)(4). Grossman v. Waltham Chemical Co., 14 Mass. App. Ct. 932, 933 (1982); Homsi v. C.H. Babb Co., 10 Mass. App. Ct. 474, 479 (1980). See also, Whitehall Co. Ltd. v. Barutta, 404 Mass. 497 (1989) (conflicting evidence concerning defendant-contractor’s failure to disclose discounts received on building materials and to pass such discounts along to plaintiff-owner presented question of fact under c. 93A §11).

The trial court made no findings on Dunlavey’s claims for indemnification and contribution. Dunlavey has prudently avoided any reliance on Couillard v. Slater, 1980 Mass. App. Div. 203, 204 for the proposition feat these claims related back to Eaton’s original, timely complaint and were feus not barred by limitations statutes governing independent actions. There was no factual or legal basis for such claims in this case. No evidence of an express or implied contract of indemnification by ATE was presented. See, e.g., Fireside Motors, Inc. v. Nissan Motor Corp. in U.S.A., 395 Mass. 366, 374-375 (1985). Similarly, the right to contribution is derivative and requires a third party plaintiff and third party defendant to share a joint liability in tort, or a joint and common debt See, e.g., Dighton v. Federal Pac. Elec. Co., 399 Mass. 687, 691 (1987); Quintin v. Magnant, 285 Mass. 450, 451-452 (1934). Durilavey’s liability to Eaton for breach of their equipment rental agreement was direct and exclusive. ATE was not a party to this contract

The result would be the same if Dunlavey’s third party claim were viewed as one for breach of warranty for negligent repairs or defective equipment. As Dunlavey sought damages for only economic loss rather than physical injury, his breach of warranty claim was governed by the G.Lc. 106, §2-725 four year statute of limitations. Bay State Spray & Provincetown SS, Inc. v. Caterpillar Tractor Co., 404 Mass. 103 (1989). Under §2-725(2), a causeof action accrues “when tender of delivery is made.” Dunlavey accepted delivery of fee scope on the same day he executed fee lease agreement namely October 31,1984.