83 Mass. App. Ct. 325 (2013)                    325

Massachusetts Housing Opportunities Corporation *v.* Whitman & Bingham Associates, P.C.

MASSACHUSETTS HOUSING OPPORTUNITIES CORPORATION *vs.*
WHITMAN & BINGHAM ASSOCIATES, P.C., & another.[1]

No. 12-P-53.

Essex. October 3, 2012. - February 21, 2013.

Present: GRAHAM, VUONO, & HANLON, JJ.

*Sewage Disposal. Limitations, Statute of. Negligence,* Installation of septic
system, Misrepresentation. *Fraud. Contract,* Performance and breach.
*Consumer Protection Act,* Unfair or deceptive act.

In a civil action arising from a contract for the design of a septic system for a
condominium development project, the judge properly granted summary
judgment in favor of the defendant engineering firms, where the tort
claims were barred by the applicable statute of limitations, in that, assum-
ing the plaintiff was injured as alleged, it reasonably should have been
aware of the escalating cost of the system more than three years before the
plaintiff filed its complaint, given the active role the plaintiff played both
in permitting and contracting for the wastewater treatment plant at issue
[328-329]; where the contract action, which relied on the same factual al-
legations set forth in the tort claims, also was barred by the statute of
limitations, in that the gist of the action was one of tort, not contract
[329-331]; and where the claim of violation of G. L. c. 93A lacked the
required allegations of coercive or extortionate behavior [331].

CIVIL ACTION commenced in the Superior Court Department on
May 23, 2008.

The case was heard by *Maynard M. Kirpalani,* J., on motions
for summary judgment.

*Daniel J. Murphy* for the plaintiff.

*Eric A. Howard* (*Patricia B. Gary* with him) for Whitman &
Bingham Associates, P.C.

GRAHAM, J. After a wastewater treatment plant for one of its
development projects vastly exceeded projected costs, the plain-
tiff, Massachusetts Housing Opportunities Corporation (MHOC),

[1]Aquapoint, Inc.

326                    83 Mass. App. Ct. 325 (2013)

Massachusetts Housing Opportunities Corporation *v.* Whitman & Bingham Associates, P.C.

filed a complaint alleging tort claims (counts I - III), breach of contract (count IV), and violation of G. L. c. 93A (count V) against the defendants, engineering firms Whitman & Bingham Associates, P.C. (Whitman), and Aquapoint, Inc. (Aquapoint).[2] A judge of the Superior Court granted the defendants' motion for summary judgment, and MHOC appeals. It argues that the judge erred in concluding that its tort and contract claims are barred by the applicable statute of limitations, and that its c. 93A claim is without support in the record. We affirm.

*Background.* The undisputed facts, viewed in the light most favorable to the nonmoving party, MHOC, are as follows. In 2003, MHOC, a property development corporation, was in the process of developing a condominium project in Sterling (development). On October 2, 2003, it entered into an agreement with Whitman to design "a subsurface sewage disposal system" (septic system) for the development. Whitman, in turn, hired Aquapoint to provide information about sewage treatment equipment and permitting advice. Whitman began work on the design, and, in November, 2004, told MHOC that the septic system could be permitted relatively inexpensively under the Department of Environmental Protection's (DEP) Title 5 alternative system for piloting program (piloting program).[3] Thereafter, on December 15, 2004, Whitman submitted an application under the piloting program on behalf of MHOC. MHOC signed the application and paid the $430 filing fee by check. Also in December, 2004, MHOC received a $300,000 bid from a third party, M.P. Crowley, to construct the septic system as designed by Whitman.[4]

Shortly after the piloting program application was submitted, DEP instructed Whitman that it must instead file an application for a major groundwater discharge permit (MGD permit). Whitman, in turn, told MHOC of DEP's instructions. On January 7, 2005, Whitman submitted a new MGD permit application on

---

[2]Aquapoint filed a suggestion of bankruptcy with this court on March 7, 2012. The appeal was thereafter stayed as to Aquapoint only, with a status report due on May 18, 2012. No status report has been filed to date.

[3]Whitman specifies that it communicated to MHOC that it would "attempt" to secure a Title 5 permit for the septic system.

[4]This estimate included necessary costs for equipment and outbuildings that were not included in the Whitman design.

behalf of MHOC for the construction of a "wastewater treatment" plant. Again, MHOC signed the application and paid the now $13,445 filing fee. Despite the change in permit sought and the dramatically increased filing fee, Whitman submitted the same design it had already created for the piloting program.

On February 3, 2005, DEP informed MHOC that Whitman's design was "administratively deficient" in numerous identified respects. Neither MHOC nor Whitman remedied any of the perceived problems and, on April 1, 2005, DEP formally rejected Whitman's MGD permit application, identifying forty-two deficiencies to be remedied before a permit could issue. Whitman eventually modified the original design to meet the specified requirements, essentially transforming its original septic system design "to a full-blown sewer treatment plant." Both parties then worked with DEP to expedite its review and approval of the application.

After receiving the modified design, on May 10, 2005, Aquapoint submitted to MHOC a $288,611.65 "final bid" for the materials to construct the wastewater treatment plant. The figure did not include labor costs. At about the same time, M.P. Crowley told MHOC that, because of the design changes, it was withdrawing its prior bid of $300,000. DEP approved Whitman's new design in June, 2005, and construction commenced. The Whitman-designed wastewater treatment plant eventually cost MHOC more than $700,000.

On May 23, 2008, MHOC filed a complaint in the Superior Court against the defendants alleging professional malpractice, negligent misrepresentation, fraud, breach of contract, and violations of c. 93A. At their core, the claims are largely premised on an alleged promise made by Whitman on at least two separate occasions that the wastewater treatment plant would not cost more than $200,000. According to MHOC, it was not until June, 2005, that it became aware of the full cost to build the wastewater treatment plant.

The defendants thereafter moved for summary judgment, arguing that the tort and breach of contract claims were time barred. The judge agreed, concluding that a three-year statute of limitations applied to those claims, and that MHOC had notice of its alleged injuries more than three years prior to the filing

date. The judge also concluded that the defendants were entitled to judgment on the c. 93A claim, as "nothing within the summary judgment record . . . indicate[s] [that] the purpose of these misrepresentations/omissions was coercive or extortionate." This appeal followed.

*Discussion.* Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002); *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). "We review a grant of summary judgment de novo, construing all facts in favor of the nonmoving party." *Miller* v. *Cotter*, 448 Mass. 671, 676 (2007).

a. *Statute of limitations.* i. *Tort claims.* "Tort claims in Massachusetts are governed by the three-year limitations period set forth in G. L. c. 260, § 2A, amended by St. 1973, c. 777, § 1." *Doherty* v. *Admiral's Flagship Condominium Trust*, 80 Mass. App. Ct. 104, 107 (2011). Therefore, in this case, MHOC's negligence and other tort claims must have accrued on or after May 23, 2005, "or fall under the protection of an applicable exception, to be within the statutory limitations period." *Ibid.* Although the permitting process had begun well before that date, MHOC maintains that its action was tolled by the discovery rule because it was not until June, 2005, that it became aware of the actual cost of the wastewater treatment plant.

"Under our discovery rule, a cause of action for negligence accrues when 'a plaintiff knows or reasonably should know that it has sustained appreciable harm as a result of a defendant's negligence.' " *Khatchatourian* v. *Encompass Ins. Co. of Mass.*, 78 Mass. App. Ct. 53, 57 (2010), quoting from *Massachusetts Elec. Co.* v. *Fletcher, Tilton & Whipple, P.C.*, 394 Mass. 265, 268 (1985). "What a plaintiff knew or should have known is a question of fact that is often unsuited for summary judgment. . . . However, 'when the facts regarding discovery of harm are undisputed, the question may be decided as matter of law.' " *Ibid.*, quoting from *Vinci* v. *Byers*, 65 Mass. App. Ct. 135, 139 (2005).

In its complaint, MHOC alleges that Whitman negligently failed to identify the proper waste disposal system for the

development, and supplied false and misleading information to MHOC about the size and scope of that system, its permitting costs, and the rejection of the December 15, 2004, permit application. These failures and omissions, it contends, caused it to suffer economic harm that it did not discover until June of 2005, when DEP finally approved the modified design and "the system went from $300,000 to $800,000."

The argument is unconvincing. Assuming MHOC was injured as alleged, it reasonably should have been aware of the escalating cost of the system well before June, 2005. The permitting process began in December, 2004, and January, 2005, when MHOC signed both DEP applications and paid the associated fees.[5] It then remained in contact with DEP, including receipt of the April 1, 2005, letter listing the deficiencies in the permit application. With multiple DEP rejections in hand, MHOC reasonably should have known that Whitman's original design was not viable, and that a more sophisticated and expensive design was required. In addition, by May 10, 2005, MHOC had received the Aquapoint bid, which likewise served as notice that $200,000 was no longer a realistic budget figure.[6] In sum, given the active role MHOC played both in permitting and contracting for the construction of the treatment plant, its argument now that Whitman purposely kept it in the dark about the evolving system design rings hollow. Summary judgment was properly entered on the tort claims (counts I-III).

ii. *Contract claim.* MHOC also alleges that it entered into a valid and binding oral contract with Whitman whereby, in exchange for financial compensation, Whitman "agreed to provide MHOC with a design for the Project's sewage treatment system that would cost approximately two-hundred thousand dollars ($200,000.00) to construct." On appeal, MHOC argues that the judge erred in treating the contract action as a tort action for purposes of the statute of limitations. We agree with the judge.

---

[5] When asked at a deposition what he thought of the over $13,000 fee for the MGD permit application, MHOC president Gerard Welch responded that he was "suspicious." He then retracted that response, and stated that he was "concerned."

[6] In fact, Welch stated, "I think I fell off my chair," in response to a question about what he did when he received the $288,611.65 Aquapoint bid.

On its face, the claim is for breach of an express warranty, an action in contract governed by the six-year statute of limitations. G. L. c. 260, § 2. MHOC may not, however, "escape the consequences of a . . . statute of limitations on tort actions merely by labelling the claim as contractual. The court must look to the 'gist of the action.' " *Anthony's Pier Four, Inc.* v. *Crandall Dry Dock Engrs., Inc.*, 396 Mass. 818, 823 (1986) (*Anthony's Pier Four*), quoting from *Hendrickson* v. *Sears*, 365 Mass. 83, 85 (1974).

In this case, despite MHOC's casting of Whitman's alleged promise in terms of an express warranty, the contract action relies on the same factual allegations set forth in its tort claims, principally that Whitman negligently failed to identify the proper system required for the development, and thereafter concealed the true cost of the system. The gist of the action is accordingly one of tort, not contract. See *Kingston Hous. Authy.* v. *Sandonato & Bogue, Inc.*, 31 Mass. App. Ct. 270, 273 (1991).[7]

MHOC nevertheless cites *Anthony's Pier Four, supra* at 823, in support of its position that it may maintain a contract action because Whitman expressly promised a "specific result." The facts of the two cases are distinguishable. In *Anthony's Pier Four*, the defendant architect, who designed and constructed a ship cradle and mooring system that failed during a storm and led to the destruction of the plaintiff's ship, expressly promised that the system would withstand expected wind and tidal forces. The court held that in those circumstances, the applicable statute of limitations for tort claims[8] did not apply as "[t]his promise, if given, impose[d] [a] higher duty on the defendants than the implied promise that in designing the mooring system they would 'exercise that standard of reasonable care required of members of [their] profession.' " *Ibid.*, quoting from *Klein* v. *Catalano*, 386 Mass. 701, 719 (1982).

---

[7]We note that under contract law, misrepresentation does not form the basis of an affirmative claim for damages. See Restatement (Second) of Contracts, c. 7, Topic 1, Introductory Note, at 425 (1981). Rather, it may operate to void a contract, prevent the formation of a contract, or be the grounds allowing for the reformation of a contract. *Id.* at 424-425.

[8]See G. L. c. 260, § 2B, which is "a statute of repose, as well as a statute of limitations, which limits the time period within which tort claims may be brought against design professionals." *Anthony's Pier Four, supra* at 821.

Here, MHOC alleges that Whitman essentially promised it a certain budget figure for the system. Unlike in *Anthony's Pier Four*, this promise did not guarantee a heightened level of workmanship. In other words, the "specific result" alleged in this case had nothing to do with the proper operation or function of the wastewater treatment plant. Rather, as we have already observed, the claim is premised on Whitman's alleged negligence.[9] Summary judgment on the contract claim (count IV) was therefore properly entered.

b. *Violations of c. 93A.* MHOC lastly argues that the judge erred in dismissing the c. 93A count of its complaint, as "negligence may form the basis for a claim of unfair or deceptive acts under G. L. c. 93A if the conduct involves dishonesty, fraud, deceit or misrepresentation." MHOC cites nothing in the summary judgment record, however, to counter the judge's observation that MHOC's claim lacks the required allegations of "coercive or extortionate" behavior. *Diamond Crystal Brands, Inc.* v. *Backleaf, LLC,* 60 Mass. App. Ct. 502, 507 (2004). We see no reason to disturb his reasoned decision.

*Judgment affirmed.*

---

[9]MHOC's complaint alleged that had it known that it would be required by DEP to construct a "more sophisticated waste disposal system" instead of the septic system originally designed by Whitman, it would have increased the size of the development, which "would have increased MHOC's profits."