NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-492

CRANBERRY COMMONS CONDOMINIUM, LLC, & others[1]

vs.

PETER R. BARBAGALLO & another.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a bench trial limited to the determination of the correct statutes of limitations for two counts of the plaintiffs' complaint, a Superior Court judge (trial judge) denied the plaintiffs' motion for a directed finding and entered judgment for the defendants. The plaintiffs appeal, arguing that the trial judge erred in concluding that both counts were barred by the statute of limitations applicable to torts. We affirm.

---

[1] Road Glider Enterprises, LLC, and Frank Ciampa.

[2] Cranberry Commons Investors, LLC.

Background.  In 2011, plaintiff Road Glider Enterprises, LLC (RGE) and defendant Cranberry Commons Investors, LLC (CCI) entered into a joint venture agreement creating plaintiff Cranberry Commons Condominium, LLC (CCC) for the purpose of purchasing land and developing condominiums in Middleton (the project).  At the same time, plaintiff Frank Ciampa, as manager of RGE, and defendant Peter R. Barbagallo, as manager of CCI, entered into the CCC operating agreement.  Under the terms of both agreements, Barbagallo would serve as CCC's sole manager.  In June 2013, Ciampa and his attorney investigated the disappearance of CCC's funds and learned that Barbagallo "was cashing [CCC] checks and checks for the Project's vendors for his personal use."  In 2014, Barbagallo was convicted in the Superior Court of larceny, embezzlement, making false entries into corporate books, forgery, and passing forged checks relating to funds belonging to CCC.[3]  Barbagallo was sentenced to serve a period of incarceration on weekends at the house of correction, followed by a period of probation, and ordered to pay restitution of $200,000.

On May 20, 2019, five years and eleven months after Ciampa's discovery of Barbagallo's wrongdoing, the plaintiffs

_____

[3] See Commonwealth vs. Barbagallo, Mass. Super. Ct., No. 1477CR01250 (Essex County Feb. 2, 2015).

(CCC, RGE, and Ciampa) filed the instant lawsuit against defendants Barbagallo, CCI, and others,[4] asserting nine claims, alleging breach of contract, tortious conduct, and violations of G. L. c. 93A.  Prior to trial, four of the nine counts were dismissed as barred by the applicable statutes of limitations, and the plaintiffs agreed not to proceed on three others.

The parties tried the remaining counts (count I, alleging breach of contract, and count II, alleging breach of the implied covenant of good faith and fair dealing) on agreed facts and exhibits.  In a written memorandum of decision and order on the plaintiffs' motion for a directed finding, the trial judge determined that both counts were barred by the three-year statute of limitations applicable to tort claims, G. L. c. 260, § 2A, and dismissed them.  Judgment then entered for the defendants.

Discussion.  The plaintiffs argue that the judge erred in concluding counts I and II were barred by the three-year statute of limitations applicable to tort claims, G. L. c. 260, § 2A, because the claims sounded in contract and thus a six-year statute of limitations applied pursuant to G. L. c. 260, § 2.

_____

[4] Peabody Check Cashing, Inc., William Masino, and Scott Cerullo.  Because the counts against these defendants were dismissed prior to trial, and the plaintiffs do not challenge the dismissal of those counts, these defendants are not parties in this appeal.

3

1.  _Standard of Review_.  The applicability of a particular statute of limitations is a question of law.  See _Premier Capital, LLC_ v. _KMZ, Inc_., 464 Mass. 467, 469 (2013).  We review a trial judge's conclusions on questions of law de novo.  See _H1 Lincoln, Inc_. v. _South Washington St., LLC_, 489 Mass. 1, 13 (2022).

2.  _Applicable statute of limitations_.  "[T]he determination of whether the contract or tort statute of limitations applies is controlled by the essential nature of a party's claim."  _Royal-Globe Ins. Co._ v. _Craven_, 411 Mass. 629, 636 (1992).  "The court must look to the 'gist of the action.'"  _Anthony's Pier Four, Inc_. v. _Carndall Dry Dock Eng'rs_, 396 Mass. 818, 823 (1986), quoting _Hendrickson_ v. _Sears_, 365 Mass. 83, 85 (1974).  See, e.g., _Massachusetts Hous. Opportunities Corp_. v. _Whitman & Bingham Assocs., P.C._, 83 Mass. App. Ct. 325, 330 (2013) (gist of breach of contract claim sounded in negligence and therefore three-year statute of limitations applied).  If the defendant raises the statute of limitations as a defense, "the burden of proving facts that take the case outside the impact of the statute falls to the plaintiff."  _Riley_ v. _Presnell_, 409 Mass. 239, 244 (1991).

In the present case, the plaintiffs have failed to meet their burden of proving that the facts take their claims in counts I and II outside of the three-year statute of limitations

4

period applicable to torts.  The plaintiffs' central allegation, spelled out clearly in their complaint, is that Barbagallo, in his capacity as manager of CCC, secured funds from CCC, ostensibly to pay contractors and subcontractors working on the project, and then stole those funds for his personal use. Therefore, the "gist" of the action is for fraud, embezzlement, conversion of funds, and, because Barbagallo stole from CCC to the detriment of CCC and its members, a breach of his fiduciary duty.  "[C]onversion of funds . . . [is] plainly a tort claim." Woodcock v. American Inv., Co., 376 Mass. 169, 174 (1978). Fraud and embezzlement are both forms of conversion.  See Black's Law Dictionary 420 (11th ed. 2019) (defining tort of "conversion" as "[t]he wrongful possession or disposition of another's property as if it were one's own").

The CCC operating agreement does not convert the alleged tortious behavior here into a breach of contract claim.  It provides that the managers, with Barbagallo specifically named as the initial manger, are to "manage the business and affairs of [CCC] and for this purpose to employ, retain or appoint any officers, employees, consultants, agents, brokers, professionals or other persons in any capacity for such compensation and on such terms as the Managers deem necessary or desirable."  The agreement does not provide that managers must compensate these contractors, how they are to allocate the personal property of

5

CCC, or that they are to refrain from embezzling funds. Rather, it allows managers substantial discretion in carrying out these duties and, indeed, insulates them from liability to CCC, its members, and from lawsuits arising from their good faith conduct in managing the project. In short, the scope of the managers' duties specified in the agreement does not alter the gist of counts I and II of the complaint.[5]

The plaintiffs further contend that Barbagallo's tortious conversion of funds constituted a violation of the covenant of good faith and fair dealing implied in every contract. See Weiler v. PortfolioScope, Inc., 469 Mass. 75, 82 (2014). We are not persuaded.

"The purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations" expressed in a contract. Uno Restaurants, Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385 (2004). "The scope of the covenant is only as broad as the contract that governs the particular relationship" (citation omitted). Chokel v. Genzyme Corp., 449 Mass. 272, 276 (2007). It "may not, however, be

---

[5] Indeed, section 3.08 of the operating agreement, which states that managers are not liable for their good faith conduct in exercising their duties under the contract, but may be liable for breaches of fiduciary duty, intentional conduct, or violations of law, essentially protects managers from contract claims but not from tort claims.

invoked to create rights and duties not otherwise provided for in the existing contractual relationship." Uno Restaurants, Inc., 441 Mass. at 385. As noted above, the agreements here did not include specific provisions that made fraud, conversion of funds, or irregularities related to payment of contractors breaches of the contract. Accordingly, the implied covenant did not impose a contractual duty on Barbagallo to avoid such tortious conduct. Compare Chokel, 449 Mass. at 275-278 (shareholders' expectation that they would receive current fair market value for their stock, contrary to explicit terms of articles of organization that governed exchange provisions for that stock, was not protected by implied covenant of good faith and fair dealing).[6]

3. Default. After judgment entered for the defendants, the plaintiffs filed a motion to alter or amend the judgment. In that motion, they argued, for the first time, that the trial judge erred in allowing Barbagallo to assert a statute of limitations defense after a default judgment had been entered

---

[6] Because we affirm the trial judge's ruling that the gist of the plaintiffs' claims in counts I and II lie in tort and not contract, and therefore are barred by the three-year statute of limitations, we need not reach Barbagallo's alternative argument that he was not a party to either the joint venture or operating agreements and therefore, owed no contractual duty to the plaintiffs.

7

against him.  We agree with the trial judge that this argument was waived.

As the trial judge noted, after the default judgment was entered against Barbagallo on August 15, 2019, he filed an answer less than a month later, on September 11, 2019.  The plaintiffs never sought a hearing on the default judgment.  To the contrary, the parties filed an "Agreed Statement of Facts" on April 14, 2023, and then an "Amended Agreed Statement of Facts" on July 14, 2023, all in preparation for a jury-waived trial.  Prior to trial, the plaintiffs filed a memorandum of law in support of a directed finding for plaintiffs on counts I and II of the complaint.  The trial judge presided over the trial on August 4, 2023.  Finally, the trial judge issued a memorandum and order on August 23, 2023, denying the plaintiffs motion for a directed finding and entering judgment for the defendants.  At no point between September 11, 2019, when Barbagallo filed his answer, and August 23, 2023, when judgment entered, did the plaintiffs seek a hearing on the legal significance of the default judgment entered against Barbagallo.  To the contrary, the plaintiffs proceeded to trial with Barbagallo's full participation, at which they requested and received a judgment on the merits of their claim.  In these circumstances, we conclude that the trial judge did not err in finding that the plaintiffs waived any challenge to the August 23, 2023, judgment

8

based on the earlier default judgment.  See R.W. Granger & Sons,
Inc. v. J&S Insulation, Inc., 435 Mass. 66, 73-74 (2001) ("It
is, of course, axiomatic that an appellate court need not
consider a claim that is asserted for the first time after
judgment has entered below"; issue first raised in postjudgment
motion deemed waived).

Judgment affirmed.

By the Court (Massing,
Neyman & Wood, JJ.[7]),

Clerk

Entered:  July 21, 2025.

---

[7] The panelists are listed in order of seniority.

9